## Commonwealth v. Saylor.
(Decided December 3, 1913).
### Appeal from Magoffin Circuit Court.

1. Homicide—Voluntary Manslaughter—What Essential to Commission of.—It is essential to the commission of voluntary manslaughter that the homicide should have been willfully and inten-

tionally committed, or under such circumstances as to strike one at first blush, as so reckless and wanton as to be felonious, though apparently not so intended by the perpetrator.

2. Instructions.—In testing instructions, every deduction which the jury might have been authorized to make from the testimony must be assumed as a proven fact.

3. Instructions.—It is a well settled rule that instructions applicable to every state of case deducible from the testimony, or supported by it to any extent, should be given.

JAMES GARNETT, Attorney General, W. H. MAY, BYRD & NICKELL and W. R. PRATER for appellant.

OPINION OF THE COURT BY JUDGE MILLER—Certifying the law.

At the February term, 1913, of the Magoffin Circuit Court the defendant, Dennie Saylor, was indicted for the murder of Mack Bailey. The indictment contained two counts; one charging willful murder, the other charging him with conspiring with Bud Collins to kill Bailey. A separate indictment was returned against Collins, but he made his escape and has never been apprehended. Saylor was tried at the May term, 1913, but the jury failed to agree upon a verdict.

Upon the trial the court gave an instruction covering the law of murder, and the attorney for the Commonwealth asked the court to further instruct the jury upon the law of voluntary manslaughter; but the court refused to do so. The Commonwealth has appealed from that ruling for the purpose of settling the law upon that question.

The Commonwealth contends that the proof clearly shows a concerted action between Collins, who killed Bailey, and Saylor, who was Collins' companion at the time.

In criminal prosecutions it is the duty of the trial judge to give the whole law of the case; and in doing so he should instruct upon every view of the case presented by the evidence.

The failure or refusal to charge on manslaughter in a prosecution for murder, where the evidence was such that the crime might have been manslaughter, is error. Wharton on Homicide, 3rd Edition, 165.

The propriety, therefore, of the ruling of the circuit judge in refusing to give an instruction upon the law of voluntary manslaughter depends upon whether there

was evidence from which a verdict for manslaughter might have been found.

In the section above quoted from, Wharton further says that any evidence tending to show the absence of malice entitles the accused to an instruction upon manslaughter, as, for instance, evidence that the accused was drunk at the time of the killing.

Blackstone's definition of voluntary manslaughter as being "the unlawful intentional killing of another without malice," was approved by this court in Montgomery v. Commonwealth, 26 Ky. L. R., 358, 81 S. W., 264; and in that opinion we further said:

"It is essential to the commission of voluntary manslaughter that the homicide should have been willfully and intentionally committed, or under such circumstances as to strike one at first blush, as so reckless and wanton as to be felonious, though apparently not intended by the perpetrator. The entire criminal law is pervaded by this doctrine."

And, in Wheeler v. Commonwealth, 120 Ky., 708, where Wheeler, the abettor, was jointly indicted with others for the murder of Maxfield, and complaint having been made against the instruction given upon voluntary manslaughter, the court cited Montgomery v. Commonwealth, *supra,* and said:

"In addition to what is expressed in the instruction complained of, it should have been so worded as to inform the jury that in order to find the appellant guilty as aider or abettor in the killing of Maxfield, they must believe from the evidence, beyond a reasonable doubt, not only that the homicide was willfully and feloniously committed by his co-defendants, or some of them, in a sudden affray, or in sudden heat and passion, without previous malice, and not in their necessary or apparently necessary self-defense, but also that appellant was at the time present, aiding, abetting, advising or assisting them in the commission of the crime."

In Greer v. Commonwealth, 111 Ky., 93, where Greer had been indicted for the murder of Thomas by compelling him to drink unusually large quantities of whiskey and wine, by beating and bruising him, by burning him with fire, and by dragging him over the ground with a rope tied around his neck, the court, in discussing the question of manslaughter in connection with that case, used the following language:

"In testing instructions, every deduction which the jury might have been authorized to make from the testimony must be assumed as a proven fact. Farris v. Commonwealth, 14 Bush, 362; Bush v. Commonwealth, 78 Ky., 268. If the defendant unlawfully and unintentionally killed the deceased, but without malice, he was guilty of voluntary manslaughter. The jury might have so found from the facts proven. Therefore, we are of the opinion that the court should have given an instruction on voluntary manslaughter, drawn to suit the facts which were proven in the case."

And in the late case of Tucker v. Commonwealth, 145 Ky., 84, we said:

"It is a well settled rule that instructions applicable to every state of case deducible from the testimony, or supported by it to any extent, should be given."

Bearing this rule of law in mind, we will examine the testimony with the view of determining whether an instruction upon voluntary manslaughter should have been given.

A short time before the killing of Bailey, he and Collins and several other persons met at the residence of Saylor's father upon the occasion of the marriage of Arthur Saylor, the defendant's brother. For some time Collins had been paying attention to Miss Blair, a young lady of the neighborhood, who was also present at the wedding. As a part of the festivities, the young people engaged in a play in which Collins refused to take part, but in which Bailey and Miss Blair participated as partners. This seemed to offend Collins and his uncle; and the latter becoming enraged at Bailey, drew a pistol, and cursing him ordered Bailey to leave the place, which he and others did.

Shortly thereafter Collins and Saylor met at Saylor's residence, and from there went to church, part of the way together, and they were together part of the time, at church. Collins was drunk, and had a pistol. Miss Blair was also at the church, and as she was leaving, Collins asked her to permit him to accompany her home, but she refused his request. Collins then went to his mule which was hitched nearby, got into the saddle, and he and Saylor had a conversation, Saylor resting his hand upon Collins' mule. While in this position Collins discharged his pistol once or twice from under his coat. He then road rapidly down the road a short distance, when his hat fell off. Saylor picked up the hat and

handed it to Collins, and they had another conversation. In the meantime Bailey had gone on down the road with the other people. Collins and Saylor started down the road together, and after going a short distance, Collins having fallen from the mule Saylor got on the mule and in the saddle, with Collins on behind him; and in this way they proceeded down the road. When they came in sight of Bailey, Collins again discharged his pistol once or twice, when Bailey remarked with an oath, and in the hearing of Collins and Saylor, "He is trying to bluff me." Saylor was in the saddle, holding the bridle reins in his hand, and in full control of the mule, with Collins on behind him. After these shots were fired, and this remark was made by Bailey, Collins said to Saylor, "Let me off and I will fix him," or "I will attend to him," according to the statement of some of the witnesses. Saylor stopped the mule and Collins jumped to the ground and approached Bailey, with his pistol presented at him. Bailey told Collins not to do that, and that he was Collins' friend. In response Collins remarked that he was Bailey's friend, and for Bailey not to open his mouth, Collins continuing to approach Bailey, with his pistol presented towards him. Bailey reached as if to take hold of his pistol when Collins fired, killing Bailey instantly.

Saylor then told Collins that he had done what he came there to do, and to get on his mule and get away; but before Collins was allowed to get away, one of Bailey's brothers assaulted him and he was compelled to flee afoot. Collins, however, made good his escape. Saylor then began to excuse his conduct by telling some of those present that he had done what he could to avert the shooting. On the other hand most of them testified that he did nothing whatever to prevent it, either by word or act; but, on the contrary, was in control of the mule which carried him and Collins, and stopped the mule and let Collins off when he did the shooting, and tried to assist in effecting his escape.

After Collins escaped, Saylor went on in the same direction, taking the mule with him, and never returned to give any assistance to Bailey, or in looking after his body, and did not attend the funeral, although he and Bailey were neighbors. Defendant testified that he had nothing whatever to do with the killing, and did not tell Collins to get away, and did not tell Collins that he had done what he came there to do, and that after the shoot-

ing he merely went down the road with Collins' mule, taking him back to Nelson Collins, who owned him. Saylor further says that at the time Collins jumped off the mule he tried to keep him from getting off, and took hold of his arm, whereupon Collins pulled loose from him. At least two witnesses corroborate Saylor upon this point, by saying that when Collins got off the mule Saylor seemed to try to catch him by the arm to prevent his dismounting.

According to all the witnesses, Collins was drunk.

Upon this evidence the Commonwealth contends that in addition to the instruction upon willful murder, the court should have instructed the jury as to the law of voluntary manslaughter, by saying to them, in the usual instruction in such cases, that if Collins shot and killed Bailey in sudden heat and passion, and without previous malice, and not in his necessary or apparently necessary self-defense; and further, that if Saylor was then and there present, aiding and abetting him therein, Saylor would be guilty of voluntary manslaughter, and no more.

If, as defendant contends, his participation in the killing was not the result of any weakness of heart, or cruelty or recklessness of disposition, then the law, out of indulgence to the frailty of human nature, or rather in recognition of the laws upon which human nature is constituted, very properly regards the offense as of a less heinous character than murder, and gives it the designation of manslaughter. Maher v. People, 10 Mich., 212; 81 Am. Dec., 781.

The difficulty came up suddenly, and after Collins and Saylor had heard the exclamation by Bailey that Collins was shooting to bluff him.

Under these circumstances the jury might have found there was an absence of malice; and if that was true the crime would be reduced from murder to voluntary manslaughter.

We are of the opinion that Collins would have been entitled to an instruction upon voluntary manslaughter under these facts; and that being true Saylor was entitled to a similar instruction. A failure to give it, would have been a reversible error, if he had been found guilty.

We think the circuit judge should have given an instruction covering the law of voluntary manslaughter.

This opinion is certified as the law of the case.