## Rowe, et al. v. Commonwealth.

(Decided December 16, 1924.)

### Appeal from Pike Circuit Court.

1. Homicide—Instruction on Self-Defense Erroneous, where Issue was Not Involved.—In homicide prosecution, in which there was no issue as to self-defense, the court erred in giving instruction thereon.

2. Criminal Law—Question is for Jury, where there is Any Evidence.—Where there is any evidence on an issue, the question is for the jury.

3. Homicide—Instruction, Submitting Question whether Killing was done Willfully and with Malice, Held Warranted.—In prosecution

of police officers for homicide following death of occupant of automobile, at which they had fired, instruction, submitting question whether killing was done willfully and with malice aforethought, held warranted.

4. Homicide—Instruction on Sudden Affray, or Sudden Heat and Passion, Held Not Warranted by Evidence.—In prosecution of police officers for homicide of occupant of automobile, at which they fired, instruction on sudden affray, or sudden heat and passion, held not warranted by evidence.

5. Homicide—Instruction, Submitting Question Whether Killing was Direct and Natural Result of Gross Carelessness, Held Warranted. —In prosecution of police officers for homicide of occupant of automobile, at which they fired, instruction, submitting question whether killing was direct and natural, though unintentional result of a reckless or grossly careless handling or firing of a pistol, held warranted by evidence.

6. Homicide—Instruction, Submitting Question of Whether Killing was Natural Result of Gross Carelessness, should Define "Grossly Careless."—In homicide prosecution, court in submitting question whether the killing was a direct and natural, though unintentional, result of grossly careless handling or firing of pistol, should define "grossly careless" as requiring act to be done under such circumstances as to strike one at first blush as careless or wanton.

7. Homicide—"Involuntary Manslaughter" and "Accidental Killing" Distinguished.—Where act is lawful and lawfully done under a reasonable belief that no harm is possible, the killing is accidental killing and not involuntary manslaughter, which is the result of an unlawful act, or of a lawful act done in an unlawful way.

8. Homicide—Instruction on Accidental Killing Held Not Warranted. —In prosecution of police officers for homicide of occupant of automobile, at casing of which they fired, court should not have instructed on accidental killing, since the shooting could not have been done under a reasonable belief that no harm was possible.

9. Homicide—Proper Instruction on Involuntary Manslaughter Stated by Court of Appeals, for Guidance of Lower Court on New Trial.—In prosecution of police officers for homicide of occupant of automobile, at which they fired, proper instruction on involuntary manslaughter stated by Court of Appeals, for guidance of lower court on new trial. '

10. Homicide—Police Officers Being Prosecuted for Homicide should be Permitted to Testify as to Manner in which they Fired Pistols, and Reason Therefor.—In prosecution of police officers for homicide of occupant of automobile, at which they fired, the officers should be permitted to state how they fired, at what they fired, and why they fired their pistols.

11. Criminal Law—Only Law as Given by Court and Evidence Admitted should be Argued to Jury.—Only the law of a case as given by the court and the evidence admitted by the court should be

argued to the jury, and all references to outside matters which may inflame jury should be omitted.

DAUGHERTY & BARRETT and A. J. KIRK for appellants.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Bart Rowe, Joe Belcher and Dave Fair were indicted in the Pike circuit court for the willful murder of Clinard Clevinger. On a trial of the case they were each found guilty of voluntary manslaughter; the punishment for Rowe and Belcher was fixed at ten years in the penitentiary and the punishment of Fair at two years. They appeal.

The facts of the case are these: Bart Rowe was the chief of police of Elkhorn City. On April 13, 1924, the police judge of the city issued a search warrant authorizing him to search a Ford automobile occupied by Ralph Ratliff, Clinard Clevinger and Fred Ratliff for intoxicating liquor, also commanding him to arrest these persons and bring them before the police judge at his office as speedily as possible. Rowe filed before the police judge an affidavit for the issuing of the search warrant. The police judge did not then issue the warrant, but after looking into the matter further, later in the day issued the warrant and delivered it to Rowe at his house, directing him to execute it at once. Rowe summoned Joe Belcher and Dave Fair as a *posse*. He and these two men went to the bridge, thinking that in a short time the persons referred to would cross the bridge in the automobile. They soon saw the car coming and walked on across the bridge until they got near the center of the bridge where there was an electrict light. Rowe had on his policeman's uniform and his policeman's cap. There is a conflict of evidence as to the details of what followed. The proof for the Commonwealth by three witnesses who were in the car is to the effect that they did not recognize the policeman or hear his command to halt until they were too close to him to stop the car before reaching him; that they did not increase the speed of the car, and after they passed him a number of shots were fired, and when they stopped the car Clevinger was shot through the head and unconscious. On the other

hand, the proof for the defendants is to the effect that Rowe had his searchlight in his hand and was waiving this when the automobile turned into the bridge; that he was in plain view of the occupants of the car and three times called out "halt," but instead of halting they applied the gas to the car and increased its speed, hollering out "to hell with you." The policeman got out of the road and after they passed him in this way drew his pistol and with a view to stopping the car began firing at the casing of the wheels. Belcher also drew his pistol and did the same thing. Fair testifies that he only fired two shots and fired these not at the car but down in the water simply to frighten the occupants of the car and make them stop. Rowe and Belcher each fired five shots. The bridge was 480 feet long; they were standing about 90 feet from where the car entered the bridge. Rowe after firing two shots ran after the car and fired the other shots when the car was near the end of the bridge. Only one shot hit the car and this shot killed Clevinger. As the car left the bridge something looking white was seen to fly off to one side and later a broken bottle was found there with whiskey on the ground. The next morning another bottle was found on the other side of the road. The car ran into a ditch soon after leaving the bridge and was stopped. The occupants of the car were all intoxicated, including Clevinger.

There was no self-defense in the case. The court erred in giving any instruction on self-defense; but, under the rule in this state that where there is any evidence the question is for the jury, an instruction submitting to the jury whether the killing was done willfully and with malice aforethought should be given. There was nothing in the evidence warranting an instruction on a sudden affray or sudden heat and passion, and the instruction submitting this question to the jury should not have been given.

There was sufficient evidence to warrant instruction 4, submitting to the jury whether the shooting and killing of the deceased was a direct and natural though unintentional result of a reckless or grossly careless handling or firing of a pistol by either of the defendants when he knew that it was dangerous to life to so use, handle or fire the pistol at that time and place. The court should have defined "grossly careless" by telling the jury that grossly careless means that the act was done under such

circumstances as to strike one at first blush as reckless or wanton. Commonwealth v. Saylor, 156 Ky. 249.

There is no evidence of a concert of action by the defendants. The shooting was all done after the car passed with a view of stopping it. Rowe and Belcher fired at the car, and Fair, under the evidence, did not fire at the car at all. The instruction as to aiding and assisting should contain these words after the word "did," "by firing at said car," so as to read, "and did by firing at said car willfully aid," etc.

> "Involuntary manslaughter is the killing of another person in doing some unlawful act not amounting to a felony, nor likely to endanger life, but without an intention to kill, or where one kills another while doing a lawful act in an unlawful manner." Westrup v. Com., 123 Ky. 97.

The distinction between involuntary manslaughter and accidental killing has not always been clearly observed. In 13 R. C. L. 863, an accidental killing is thus defined:

> "When it appears that a killing was unintentional, that the perpetrator acted with no wrongful purpose in doing the homicidal act, that it was done while he was engaged in a lawful enterprise, and that it was not the result of negligence, the homicide will be excused on the score of accident. Action accompanied not only with no intent to do harm, but under a reasonable belief that no harm is possible, is clearly wanting in every essential element of crime."

Under these definitions the killing is not involuntary manslaughter where the act is lawful and lawfully done. Involuntary manslaughter is the result of an unlawful act or of a lawful act done in an unlawful way. Where the act is lawful and lawfully done under a reasonable belief that no harm is possible, it is an accidental killing.

The court concludes that the shooting at the casing of the car with a pistol after the car passed the defendants was attended with danger to the occupants of the car and that such shooting can not be held to be done "under a reasonable belief that no harm is possible," but that, on the contrary, the reasonable belief must be that there would be danger to the occupants of the car from such shooting. No instruction on accidental kill-

ing should therefore have been given. The shooting was not accidental but intentional. On another trial the court will give the jury the following instruction on involuntary manslaughter:

"If the jury shall not believe from the evidence beyond a reasonable doubt that the shooting and killing of the deceased, Clinard Clevinger, was done by either of the defendants and was the direct and natural result of a reckless, wanton or grossly careless firing of the pistol, as set out in the last instruction, but do believe from the evidence that said firing of the pistol by him was without any purpose of shooting any of the occupants of said car, and do further believe from the evidence beyond a reasonable doubt, that the said killing resulted from his firing of the pistol at the casing of the car and that the death of said Clevinger resulted from such firing of the pistol in Pike county and within twelve months before the finding of the indictment herein, they should find him guilty of involuntary manslaughter.

"If you shall further believe from the evidence that either of the other defendants was present and did by firing at said car willfully aid, assist, abet or encourage the one who so fired said pistol, you should find the defendants so aiding, assisting or abetting the one so doing, guilty of involuntary manslaughter. If you find the defendants, or either of them guilty under this instruction you will fix their or his punishment at a fine in any sum in your discretion or at confinement in the county jail for any length of time in your discretion or you may both so fine and imprison them or him in your discretion."

In paragraph 1 defining the duties of the policeman the court will add the words "and it was his duty" after the word "right" in the third line, so as to make it read, "and as such had the right and it was his duty to execute the search warrant." In lieu of the third paragraph of that instruction defining the duties of the occupants of the car the court will give the jury the following instruction:

"It was the duty of the occupants of the car when notified by the defendant Rowe to halt, if they knew he was an officer, to stop the car as soon as they reasonably could and give him a reasonable opportunity to make known to them that he had a search warrant authorizing him to seize and search the car and to arrest the occupants."

The instructions above indicated, with those given by the court on reasonable doubt, govern the law of the case. On another trial the court will allow the defendants to state how they fired their pistols, at what they fired and why they so fired their pistols. That is, to tell what they did and why they did these things. In the argument of the case to the jury only the law of the case as given by the court and the evidence admitted by the court should be argued to the jury. All reference to outside matters which may inflame the jury should be omitted.

Judgment reversed and cause remanded for a new trial.

Whole court sitting.