## Haupe v. Commonwealth.

(Decided April 22, 1930.)

W. A. DAUGHERTY for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Logan—Reversing.

By indictment appellant was charged with the murder of Eliza Morris. The crime was committed by his recklessly, wantonly, willfully, unlawfully, and negligently driving an automobile against and upon her while she was traveling upon a public highway, according to the accusation in the indictment. A trial resulted in the conviction of appellant for a lesser degree of the crime with which he was charged in the indictment, and his punishment was fixed at two years in the penitentiary for voluntary manslaughter.

There can be one question only raised on the record in an attack on the judgment of conviction, as the trial was conducted strictly in accordance with the procedure in such cases and there is no error great or small unless it was an error on the part of the court in failing to give a peremptory instruction to find appellant not guilty, or in overruling the motion for a new trial on the ground that the verdict was flagrantly against the weight of the evidence. The whole matter was submitted to the jury in such a way that the responsibility for the conviction or acquittal of appellant was placed on the jury. All competent evidence that was offered was admitted, and all incompetent evidence that was objected to was not allowed. The instructions covered every phase of the case in clear and concise language, and it is unnecessary to consider any question other than the evidence itself. That makes a hard case because the written or printed page containing the statement of witnesses is a dim pic-

ture of the impression that was actually made by the witnesses appearing in court and testifying in the presence of the jury. The evidence of the man of "hang-dog" expression and furtive eye whose shifting demeanor stamps him before the jury as a man of doubtful veracity, stands out as clearly on the printed page as the evidence of the frank, open man of character whose every word and action bespeak truth and candor. It is because of the opportunities of juries to see the witnesses and observe their appearance and conduct that this court is slow to reverse a case on the evidence.

But there are cases where there is no conflict in the evidence, where the truth must be deduced from the harmonious statements of all witnesses and a consideration of surrounding circumstances. This is such a case. There was no eyewitness other than appellant himself. Physical facts observable at the place of the accident immediately thereafter must, therefore, be sufficient to overcome beyond a reasonable doubt the positive testimony of appellant himself. Without elaboration the testimony of appellant is that he was driving on the public road in a heavy automobile at the rate of about thirty miles an hour when he saw in front of him, on the same side of the road, Eliza Morris. She had walked onto the public highway from a bypath and was traveling in the same direction, after reaching the public highway, as appellant. He saw her walk out in the public highway and look towards his approaching machine when she stepped back to the side of the road and started walking away in the same direction that he was going. At that time he was more than 1,000 feet away from her. He had about overtaken her when she turned and walked immediately in front of the automobile he was driving and he struck her when it was impossible, by the exercise of any degree of care, to avoid doing so. He could not tell because of his fright whether he put on the brakes, but he testified that he cut off the ignition and jumped out of the automobile before it stopped and left it rolling on down the road while he returned to the injured woman. He called to her son who was at her home by the side of the road near where she was struck.

There was a twelve year old girl who saw the automobile strike Mrs. Morris and run over her, but that is all she could tell about it. Those who came upon the scene immediately after the accident testified about the

physical evidence appearing at the time. Mrs. Morris was carrying two pails of water at the time she was struck. There was a wet place in the road where the water had been spilled. One of the buckets, mashed and disfigured, was found on one side of the road, and the other bucket was found on the other side. The wet place on the road was thirteen feet from the ditch on one side of the road and twenty-one feet from the ditch on the other side of the road. The evidence does not show how near the wet spot was to the side of the paved part of the road. The witnesses disagree as to the distance between the wet spot in the road and the place where Mrs. Morris was lying. Some thought the distance was twenty-five feet and some thought it was as much as forty feet. A slipper worn by Mrs. Morris was found twelve or fifteen feet away from where she was lying. There was evidence that the brakes had been put on the automobile and that it had skidded. Some of the witnesses thought it had skidded a distance of forty feet or more, while others thought it was less. The evidence is not clear whether there were signs of skidding before the automobile reached the wet spot in the road. One witness testified that the automobile was 191 feet from Mrs. Morris, but that means little because of the undisputed evidence of appellant that he jumped out of the automobile before it stopped and no one appears to know whether the brakes were on or off when he jumped out of the automobile. The automobile was brought back to the place where Mrs. Morris was lying and that may account for the discrepancies in the testimony of the witnesses about the distance of the automobile from the place where she was lying. A number of the witnesses thought it was about forty feet away, but it may have been moved when they saw it. One witness testified that appellant stated immediately after the accident that he did not see Mrs. Morris until he struck her. There is no proof that any signals were given. Appellant does not claim that he slowed down his automobile as he approached Mrs. Morris for the reason that he had seen her look towards the automobile and then walk back to the side of the road, indicating that she had seen it approaching.

The question before us is whether the physical facts were such as to contradict the evidence of appellant. It is argued by the Attorney General that the facts detailed indicate that appellant was traveling at a wanton and

reckless rate of speed at the time he struck Mrs. Morris. If the physical facts can be harmonized with the statements of appellant no offense was proven. The distance from the point of the collision to the place where Mrs. Morris was lying may, or may not, indicate the speed of the automobile. Whether she was dragged by the machine after it struck her, or whether the body was projected the entire distance by reason of the impact, cannot be determined from the evidence. The distance that the automobile skidded may or may not have indicated that appellant was driving at a greater rate of speed than the law permits. The condition of the road, the weight of the machine, the rate of speed, and probably other elements enter into the determination of this question. It would be a mere surmise to say that the evidence of the place where the buckets were found, or the place where the slipper was found would indicate the speed of the automobile.

The statement of appellant that he did not see Mrs. Morris until he struck her contradicted his positive testimony that he saw her when he was more than 1,000 feet away, and that he continued to see her until she turned in front of his machine.

Section 2739g-28, Ky. Stats., requires every automobile operated on a public highway to be equipped with a horn or other sound device, and requires the person operating it to sound the horn whenever necessary as a warning. If Mrs. Morris saw the automobile approaching, and this evidence is not disputed, it was not necessary to give the signals required.

As was said in the case of Jones v. Com., 213 Ky. 356, 281 S. W. 164, 166:

"To constitute voluntary manslaughter: 'It is essential . . . that the homicide should have been willfully and intentionally committed, or (be committed) under such circumstances as to strike one at first blush as so reckless and wanton as to be felonious, though apparently not intended by the perpetrator.' "

The court said that the entire criminal law is pervaded by this doctrine, and cited with approval Com. v. Saylor, 156 Ky. 249, 160 S. W. 1032; Rowe v. Com., 206 Ky. 803, 268 S. W. 571, and Montgomery v. Com., 81 S. W. 264, 26 Ky. Law Rep. 356. It was pointed out in the

Jones case that automobiles may rightfully and properly be used upon the public highways and that they are not to be classed in the same category with deadly weapons, but it was recognized that if they should be improperly handled they would be dangerous instrumentalities and the driver should be charged with the natural and reasonable consequences of his conduct. It was there held that if a person operates an automobile on a public highway in a manner that he knows, or has reasonable grounds to believe, is reasonably calculated to injure others using the highway, and under such circumstances recklessly, wantonly, and with gross carelessness, strikes and kills another, he is guilty of voluntary manslaughter. The court further defined involuntary manslaughter as the killing of another in doing some unlawful act, not amounting to a felony and not likely to endanger human life, or in killing another while doing a lawful act in an unlawful manner, there being no intention to kill in each instance. Involuntary manslaughter was so defined in Clem v. Com., 198 Ky. 486, 248 S. W. 1036; Held v. Com., 183 Ky. 209, 208 S. W. 772, and Maulding v. Com., 172 Ky. 370, 189 S. W. 251. It was further held in the case of Jones v. Com., supra, that ''gross carelessness'' meant substantially the same thing as ''reckless'' and ''wanton,'' and the latter words were defined as meaning utterly careless, having no regard for consequences or for the safety of others, yet without malice.

Where the evidence is of a conflicting nature the court will not interfere with the verdict of a properly instructed jury. Nothing is more firmly settled in our jurisdiction. In the case of Smith v. Com., 229 Ky. 159, 16 S. W. (2d) 775, this court held that the rule was so well established that it would be a vain repetition to cite authorities where the rule had been announced.

There is little conflict in the evidence before us. It is true that it was stated by some witness that appellant said immediately after the accident that he did not see Mrs. Morris until he struck her. If she had been walking in plain view in front of him while he had driven for more than 1,000 feet and he had not seen her this would be some evidence at least that he was reckless and wanton in driving the car, but he not only denied that he made the statement, but testified that he saw her during the whole time that it took him to drive the distance mentioned.

There was no one else on the public highway. He had no reason to expect any other person on the highway, and it cannot be said that he was wanton and reckless in his method of driving the car under the evidence offered in this case unless the statement attributed to him was made by him. The jury could not find him guilty of voluntary manslaughter unless it believed from the evidence, beyond a reasonable doubt, that he was driving his automobile in a wanton and reckless manner at the time of the accident. By the provisions of section 271, of the Criminal Code of Practice, a new trial should be granted if the verdict be against the evidence. If there is any evidence to support the verdict the judgment should not be reversed by this court. Com. v. Hall, 38 S. W. 498, 18 Ky. Law Rep. 783. In the case of Jones v. Com., 158 Ky. 533, 165 S. W. 673, it was held that if the evidence is conflicting the court of appeals will not, under ordinary circumstances, review the finding of the jury if there is nothing in the record tending to show that the defendant did not have a fair trial. In the case of May v. Com., 164 Ky. 109, 175 S. W. 17, and in Wells v. Com., 195 Ky. 740, 243 S. W. 1015, it was held by this court that it will not disturb a verdict unless the same is palpably against the evidence.

Under all of the evidence in this case the court is of the opinion that the verdict is palpably against the evidence. Upon careful consideration the court has reached the conclusion that there was barely enough evidence to take the case to the jury on the charge of voluntary manslaughter, but, as there was slight evidence, we will not direct the giving of a peremptory instruction on that charge if the evidence should be the same on another trial.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.