## Commonwealth v. Anderson.

(Decided June 16, 1931.)

J. W. CAMMACK, Attorney General; JAMES M. GILBERT, Assistant Attorney General; REID PREWITT; and A. F. BYRD for the Commonwealth.

W. B. WHITE and FRANKLIN REYNOLDS for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Certifying the law.

Stanley Anderson, C. F. Rogers, and Neal Guilfoile were indicted in the Montgomery circuit court for the crime of voluntary manslaughter. It is charged in the indictment that they willfully, unlawfully, and feloniously shot at and wounded O. P. Shultz, with pistols loaded with lead balls, with the felonious intention of killing him, and from which shooting he died. It was alleged in the indictment that one of them did the shooting and wounding, and that each of the others were present and then and there, did aid, assist, advise, and encourage the other in the shooting and wounding. Anderson was placed on trial. The jury returned a verdict finding him not guilty. The commonwealth appeals, asking that the law be certified.

The facts shown by the proof are in brief these: Rogers was a deputy sheriff of the county. Anderson and Guilfoile were two policemen of the city of Mt. Sterling. The trouble occurred about nine o'clock at night. There had been some disturbance in that end of the city and the three officers had gone out there in a car, which had the word "police" marked on the door. When they had reached the point they had started to and had gotten out of the car, according to the proof for the commonwealth, as stated by Shultz in his dying declaration, he passed there in his car, and when he got out to the colored cemetery, driving probably thirty miles an hour, he saw this car coming about twenty-five yards behind him. The horn was blown. He started to pull over. The first shot was fired from the front end of the car. He looked back and if he was not badly mistaken Neal Guilfoile was leaning out of the car they were all in, when a flash came from his gun and it seemed that he was paralyzed from his hips down; there were ten or twelve shots

fired. Vernon Bunner, who was in the car with Ollie Shultz testified that when they got out at the top of the cemetery hill they heard a car behind, driving very fast. They were driving slowly. When they got beyond the cemetery some one began shooting into the back of the car. They couldn't imagine who it was; and after they had gone out of the road a piece, several shots were fired into them; and when the first or second shot was fired Shultz flinched and said "Somebody has shot me." He thought it was the second shot. The defendants then got out of the car they were in and arrested him and Shultz.

On the other hand the proof for the defendants, by themselves, and several other witnesses, was in brief this: While they were waiting there with their car, Shultz came driving up the street zigzagging from one side to the other. Bunner was in the car drunk, and Shultz was under the influence of liquor and not able to drive the car properly. When they reached the stop light they did not stop, but went on without regarding the signal. The defendants then followed them in their car, and when they got near enough called to them to "halt, police," several times. Rogers also called out several times "halt, sheriff," but in answer to these commands, Shultz, who was driving the car, cursed them and went ahead. They then undertook to pass him so as to stop the car, but he would run to that side of the road every time so that they could not get by. Then in order to stop the car they began to shoot at the tires on the hind wheels without any intention of hitting anybody, and when the car stopped they did go up and arrest both Shultz and Bunner, finding them both drunk; Bunner being, as they expressed it "limber drunk". According to the proof for the commonwealth, the next morning Bunner stated to several witnesses that he did not know what occurred; and that they were both drinking and under the influence of liquor there is no question. Shultz threw out of the car the bottle from which they had been drinking not long before the shooting occurred. The court gave the jury these instructions:

"1. The court instructs the jury that if you believe from the evidence, beyond a reasonable doubt, that in this county and before the finding of the indictment in this case the defendant unlawfully, wilfully and feloniously killed Ollie Shultz by shooting him with a pistol loaded with powder and leaden ball or other hard substances, of which shooting the

said Ollie Shultz did within a year and a day die, and it was done in a sudden heat and passion or in a sudden affray and without previous malice, or if you believe from the evidence beyond a reasonable doubt that the defendant, Stanley Anderson, shot and killed Ollie Shultz, if he did do so, in this county and before the finding of the indictment, without malice aforethought by the reckless, careless shooting of the pistol, when he knew, if he did so know or had reason to know that the pistol was dangerous to life in the way he used it, although he did not intend to shoot said Ollie Shultz, then the jury should find the defendant guilty of voluntary manslaughter and fix his punishment by confinement in the state reformatory for any period of time not less than two nor more than twenty-one years.

"2. The court instructs the jury that if you believe from the evidence that the defendant, Stanley Anderson, had reasonable grounds to believe and did believe that there was no danger in shooting the pistol as he did, if he did do so, and that it ,was done without any purpose of harm upon his part, but if the jury further believe from the evidence to the exclusion of a reasonable doubt that the killing of Ollie Shultz resulted from the careless shooting of the pistol by the defendant Anderson in this county and within twelve months before the finding of the indictment herein in this case, then the jury should find the defendant Anderson guilty of involuntary manslaughter and fix his punishment at a fine in any sum in your discretion or by confinement in the county jail for any period of time in your discretion, or you may both so find and imprison him, in your discretion.

"3. The usual instruction on reasonable doubt.

"4. The court instructs the jury that the defendant, Stanley Anderson, at the time Ollie Shultz was killed, was a policeman of the City of Mt. Sterling, Kentucky; that it was the right and duty of the said Anderson to arrest with or without a warrant all persons who committed a public offense in his presence. The court instructs the jury that being drunk or intoxicated or driving an automobile on a public road, or on the streets of a city while drunk or intoxicated, is each a misdemeanor and a public offense. If you believe from the evi-

dence that Ollie Shultz or Vernon Bonner, or either one or both were drunk or intoxicated or if you believe that Ollie Shultz was driving the automobile, testified to in the evidence, in a drunken or intoxicated condition, in the presence of the defendant, Stanley Anderson, directly before and at the time of the difficulty testified about in the evidence, then it was the duty of the defendant, Stanley Anderson, to arrest Ollie Shultz or Vernon Bonner, either one or both, with or without a warrant. It was the duty of the defendant, Stanley Anderson, to inform Ollie Shultz or Vernon Bonner, either one or both, that he was an officer and that they should consider themselves under arrest. If you believe from the evidence that the defendant, Stanley Anderson, gave such notice to Ollie Shultz or to Vernon Bonner, either one or both, and that Ollie Shultz or Vernon Bonner, or either one or both, refused to submit to the arrest and that the defendant, Stanley Anderson, in order to make the arrest, in good faith, shot at the tires on the automobile or at random as testified to in the evidence, if he did do so, and by accident Ollie Shultz was shot and wounded and died from said shooting and wounding within a year and a day and if the jury believe from the evidence that the killing of Ollie Shultz, if such there was, was accidental and without carelessness on the part of the defendant, Stanley Anderson, you should find the defendant, Stanley Anderson, not guilty on the grounds of accidental shooting.''

The commonwealth complains that no instruction was given on aiding and abetting, and that under the instructions, in substance, the jury were told that Anderson was not guilty of any offense, unless the ball from his pistol hit Shultz, it being conceded in the evidence that some eight or ten shots were fired, and as shown by the commonwealth, each of the officers fired two or three shots at the car. Each was armed with a No. 38 pistol. The ball that was taken out of Shultz' body was not certainly identified as the ball that came from Anderson's pistol, although there was some effort to show this. There were three bullet holes in the back of the car and one bullet hole in the curtain of the car by the window. Shultz was shot near the spine and just about the third lumbar vertebra. In Smiddy v. Com., 210 Ky.

361, 275 S. W. 872, 873, the rule as to an aider or abetter is thus stated:

"To constitute one an aider or abettor in the commission of a crime he must be actually or constructively present when it is committed and participate in its commission by some act, word, deed, or gesture. It is not essential that there should be a prearranged agreement between him and his codefendants, but it is necessary that one charged with aiding and abetting be guilty either of some overt act or advocacy or encouragement of his principal in some way in the commission of that unlawful act." To same effect see Thompson v. Com., 1 Metc. 13, and Bradley v. Com., 201 Ky. 413, 257 S. W. 11.

In Rowe v. Com., 206 Ky. 803, 268 S. W. 571, where as here, several officers shot at the car when it refused to stop killing one of the occupants, it was held that such an instruction was proper as to all who so fired at the car. The three officers here were engaged in the common purpose to stop the car and arrest the occupants of it, and each of them fired several shots. The cases where several persons make a simple assault and one of them uses a deadly weapon, without the knowledge or consent of the others, who are unarmed, have no application, but if all three were firing their pistols in such a case, the same rule would apply, where in a case like this all were firing at the car; for in such a case, where the three pistols were similar it might not be shown beyond a reasonable doubt whose bullet struck the deceased. In instruction 1 after the words, "though he did not intend to shoot said Ollie Shultz," and before the words "then the jury," these words should be inserted:

"Or if you believe from the evidence beyond a reasonable doubt that Neal Guilfoile or C. F. Rogers shot and killed Ollie Shultz, as last above set out, and that the defendant was present and by firing at the car wilfully aided, advised or abetted in said shooting of Ollie Shultz."

In instruction 1 in lieu of the word careless the words "or grossly careless or wanton" should have been used in the expression "by the reckless careless shooting of the pistol." The offense was not voluntary manslaughter unless the shooting was reckless, or grossly

careless, or wanton. Com. v. Saylor, 156 Ky. 249, 160 S. W. 1032; Rowe v. Com., 206 Ky. 803, 268 S. W. 571; Haupe v. Com., 234 Ky. 31, 27 S. W. (2d) 394.

Instruction 2 is copied from Speaks v. Com., 149 Ky. 396, 149 S. W. 850, but in that case no question of aider or abettor was involved, and that was a case where the defendant thought his pistol was not loaded.

The shooting was intentional, not accidental, and no instruction on accidental killing should have been given. Rowe v. Com., 206 Ky. 807, 268 S. W. 571.

This case has been considered by the whole court in connection with the case of Hill v. Com., — Ky. —, 39 S. W. (2d) — this day decided. In that opinion the instructions to be given in such a case are fully set out, and it is deemed unnecessary to repeat them here. The circuit court here should have instructed the jury, in substance, as therein directed.

Anderson asked on the trial an instruction under section 1148a-7, Kentucky Statutes, in substance, that if Shultz had committed a felony by hindering or obstructing him in his official duty by violence or force, then he had a right to resist this force to the extent of killing Shultz, and he relies on McGeorge v. Com., 237 Ky. 358, 35 S. W. (2d) 530. But the proof here does not bring this case within that rule. All that Shultz did was to drive ahead and refuse to stop. In other words he was simply fleeing from the officers, and he did nothing but flee. It is true that when he tried to pass him and get in front of him, so as to obstruct the road with their car, he drove to one side to prevent their getting by. But this was not the use of such force or violence as the statute contemplates. Shultz was simply trying to get away. He had committed only a misdemeanor, and the officer had no right to kill him to stop his flight. Maggard v. Com., 232 Ky. 10, 22 S. W. (2d) 298.

The law is certified as above.