## Siler et al. v. Commonwealth.

Dec. 13, 1939.

T. E. Mahan and Tye, Siler & Siler for appellant.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

George Siler was a deputy sheriff and Lewis Bailey a constable of Whitley County. They appeal from a conviction of manslaughter, with the penalty of eight years' imprisonment for the death of William Phillips as the result of the officers causing the wreck of an automobile he was driving.

On the afternoon of November 20, 1938, the officers, at the side of the road, noticed an automobile coming up United States Highway No. 25-W zigzagging back and forth across the road. There was much travel that Sunday afternoon. Believing the driver to be intoxicated, and thereby endangering traffic, the officers got in an automobile and, having driven ahead of the other

car, got out in the middle of the road near a railroad overpass and with pistols in their hands waved down the machine, calling upon the driver several times to halt. The car slowed down and one of the officers motioned to Phillips, the driver, to turn off to one side of the road. Instead, when it was within fifteen or twenty feet of them, Phillips suddenly "stepped on the gas" and headed straight towards the officers. They jumped to prevent being struck. Both officers then fired either into the ground or at the tires of Phillips' machine; but they did not stop it. The officers again took up the pursuit. From that point the road is slightly up hill for a few hundred yards and then goes down quite a steep grade. Phillips was driving a 1929 Ford. There were ten people in it—six adults and four children. The other occupants of the machine admitted that Phillips and the other men had been drinking that afternoon, but denied any of them were drunk. As the Phillips car went down the hill it speeded up very fast, and near the foot of it swerved to the left across the road and struck the embankment with terrific force. The car was thrown backward and turned over two or three times, killing Phillips. Thus far, there was little or no contradiction as to what occurred. There is direct contradiction as to what the officers did as Phillips' machine went down the hill.

The occupants testified that the officers following shot at the car a number of times as it went down the hill. They did not know what caused the automobile to leave the road for they were too badly scared. A bystander testified that just before it turned off the road a bullet fired by Siler, standing on the running board of the automobile he and Bailey were in, struck the right front tire of the Phillips' car, thereby deflating it and causing the wreck. Another witness testified that up at the overpass, where the car was first stopped, Bailey had shot down the right front tire. A brother of the deceased introduced an automobile tube and casing declaring that they had been taken from the wrecked car. These had some rather large holes in them which it was claimed had been made by bullets; but little weight is to be attached to this evidence because of the demolished condition of the car and an apparent inability for anyone to say that the holes in the tire were caused by a bullet. There was evidence that the defendants at the time made some admissions they had been shooting. There was a

dent in the back of the car and a hole in the rear fender apparently made by bullets. The commonwealth's evidence was to the effect that as the car went down the hill Siler and Bailey were both firing at it.

The defendants claim that they first endeavored to arrest Phillips for driving recklessly and while intoxicated; that when he tried to run over them they fired into the ground or at the tires of the machine but did not hit it. They and several other witnesses testified that they did not fire again as they pursued the machine thereafter. The defendants produced evidence to show the occupants threw one or more whisky bottles from the car as it went down the hill.

The law of this case is thus well stated in Roberson's New Kentucky Criminal Law, Section 285:

"An officer is never justified in killing merely to effect an arrest or prevent an escape after arrest where the offense is a misdemeanor. The law is the same whether the offender be fleeing to avoid arrest or to escape from custody. To kill him in either case is, generally speaking, murder, but, under some circumstances, it may amount only to manslaughter, if it appear that death was not intended. But if the officer, in arresting or preventing an escape, in such cases, meet with resistance, if the offender, for example, be armed and offers forcible resistance or threatens the officer and in connection with such threat assumes a menacing attitude toward the latter, he may oppose sufficient force, in the exercise of a sound judgment, to overcome the resistance, even to the taking of life; otherwise the law would go unenforced and the officer be at the mercy of the offender. The officer can not kill the offender unless the latter is resisting to such an extent as to place him in danger of loss of life or great bodily harm. He can only do so, or inflict great bodily harm, when by reason of resistance he is placed in like danger. But the officer must use no greater force than is reasonably necessary or apparently so, for his protection, or to prevent the prisoner, if in custody, from effecting his escape by overpowering the officer by force or violence. If one in arresting another, or preventing his escape, recklessly and carelessly shoots and kills him, he is guilty of voluntary manslaughter, for the law for the protection of

life puts the risk on him who wilfully and recklessly does the act endangering it. Or, if in making the arrest, or preventing the escape, he fails to exercise reasonable care in handling or shooting firearms, and from this cause the offender is shot and killed, he is guilty of involuntary manslaughter, though he did not intentionally fire the shot that did the killing. But if the killing was not intended, and it was purely an accident and without negligence, no offense is committed.''. To which may be added the statement that the duties and rights exist to preserve the public peace and prevent the continued breach. Id. Section 291.

The Attorney General concedes that the instructions are erroneous. One of the errors claimed by the appellants is the failure of the court to include their right as officers to overcome the forcible resistance by the deceased in trying to run over them with his automobile when they tried to stop and arrest him. We do not think the defendants were entitled to such right of defense, for it is not claimed that the shots fired at that place caused Phillips' death. He had made his escape and when his car was wrecked a half mile away he was not resisting arrest unless it be considered that fleeing at fifty or sixty miles an hour is a species of resistance. Certainly, it is not such forcible obstruction to an arrest as justified the officers to kill the man in order to overcome it. Terrell v. Commonwealth, 194 Ky. 608, 240 S. W. 81; Hill v. Commonwealth, 239 Ky. 646, 40 S. W. (2d) 261.

The defendants and the deceased lived in the same community. It is undisputed that Phillips knew Siler and Bailey were officers of the law and recognized them when they tried to stop him near the overpass. It is admitted that when he was killed they were pursuing the automobile for the purpose of stopping it and arresting him. The preponderance of evidence is that when the officers first saw Phillips he was driving his automobile in such manner as afforded reasonable grounds for them to believe he was committing two misdemeanors in their presence, one by driving the motor vehicle on the highway while ''under the influence of intoxicating liquors'' (Section 2739g-34, Statutes), and the other by not operating the automobile ''with due regard for the safety and convenience of pedestrians and all other vehicles or traffic upon such highway,'' and not traveling upon the

right side of the road where it was possible. Sections 2739g-35, 2739g-44, Statutes. It is practically undisputed that deceased had committed a third misdemeanor by assaulting the officers with his automobile. Commonwealth v. Temple, 239 Ky. 188, 39 S. W. (2d) 228.

For the purpose of considering the instructions, the disputed facts and theories may be thus stated: The commonwealth's contention is that both defendants fired at the deceased's car and so frightened and disconcerted him as to cause him to lose control of it, or that a bullet fired by one of them deflated a tire thereby causing the machine to be wrecked. The defendants deny either fired a shot after the car left the overpass and that his death was caused by his losing control of the automobile because of his intoxicated condition and its excessive speed.

We have considered instructions in several cases presenting conditions or facts like those before us here. Rowe v. Com., 206 Ky. 803, 268 S. W. 571; Hill v. Com., supra; Com. v. Anderson, 239 Ky. 658, 40 S. W. (2d) 265; Terrell v. Com., supra.

Since the defendants in the instant case were indicted only for voluntary manslaughter, under the authority of those and similar cases, we think it would have been sufficient to give an instruction on that crime, based upon a deliberate shooting at or hitting the automobile of the deceased, or by reckless or grossly careless use of firearms; another on involuntary manslaughter, based upon the theory that the shooting was done through mere carelessness without intention to injure or kill deceased, and another on the rights and duties of the defendants as officers, adding, of course, the usual instructions defining the terms used and on reasonable doubt.

Except in the case of a conspiracy, ordinarily, under our practice, where more than one person is charged with the commission of a crime the parties are either principals or aiders and abettors. But as the injury committed by one is in contemplation of the law committed by each and every one of them, and the punishment the same, there is little practical difference in charging the offense or in instructing the jury other than to have the jury understand the equality of responsibility for the consequences where the facts might be such that a layman would not otherwise so understand it. It is familiar law that where there is a conspiracy

each party is liable for the acts of the others done in pursuance thereof or which follow, purposely or incidentally, in the execution of the common design. Each is responsible for the probable and natural consequences even though they were not intended as a part of the original design or common plan. In this case all the evidence shows that whatever the defendants did it was in concert. There was unity of will and unity of action to accomplish their common and joint purpose. On the theory of the prosecution, namely, that either the firing by both disconcerted the driver of the automobile or the bullet fired by one or the other of them suddenly deflated a tire, each party must be regarded as liable for the result. They were both guilty or both innocent. This conclusion is supported by the conception that, "When two or more persons unite to accomplish a criminal object, whether through the physical volition of one or of all, proceeding severally or collectively, each individual whose will contributes to the wrong doing is in law responsible for the whole, the same as though performed by himself alone." Roberson's New Kentucky Criminal Law, Section 181.

In Bennett v. Commonwealth, 150 Ky. 604, 150 S. W. 806, 808, 43 L. R. A., N. S., 419, two brothers shot a man in the same fight. It could not be told which shot caused his death. The one on trial maintained he was not responsible as the shot fired by his brother did so. As said in the opinion holding otherwise:

"In other days, when the punishment of crime was hampered far too much by legal refinements and abstruse learning, there would have been a place, perhaps, for the argument; but it can find no place now. Reason and justice have superseded these impractical and much abused rules of former days. These brothers, according to the testimony, both shot Lawson in the one encounter. The law will not stop, in such a case, to measure which wound is the more serious, and so speculate upon which actually caused the death. In many such cases the commonwealth would be helpless; for each defendant would go free because it could not be proven against him that his wound was the fatal one. Whether one actually inflicts the fatal wound, or contributes to or hastens the death in some minor way, he is guilty of the crime."

We think the instructions should be so framed as

to make each defendant responsible if the jury should find that Phillips' death was caused as the Commonwealth contends without drawing a distinction between one of the parties as a principal and the other as an aider and abettor. The instructions may also state or assume as a predicate for the jury's action facts not in dispute and submit only the controverted issues. Sizemore v. Commonwealth, 219 Ky. 505, 293 S. W. 1085; Howard v. Commonwealth, 246 Ky. 738, 56 S. W. (2d) 362; Reed v. Commonwealth, 273 Ky. 607, 117 S. W. (2d) 589, 116 A. L. R. 673. Therefore, if the evidence produced on another trial be the same as on this, the following will be sufficient and proper instructions:

The court instructs the jury:

1. At the time referred to in the evidence the defendants, George Siler and Lewis Bailey, were peace officers of Whitley County. If the jury believe from the evidence that on that occasion, in this county, in their presence, the deceased, William Phillips, was (a) driving an automobile on the highway while under the influence of intoxicating liquor; or was (b) driving same without due regard for the safety and convenience of pedestrians and other vehicles or traffic upon the highway, then in either event he was committing an offense in the presence of said officers. If the jury believe that the defendants, or either of them, in good faith believed and had reasonable grounds to believe that Phillips was committing either or both of said offenses, then it was their duty and right to arrest him therefor and to prevent him continuing so to do, and it was Phillips' duty to submit peaceably to the arrest. In performing that duty the defendants had the right to use such means as was necessary, or seemed to them in a reasonable judgment to be necessary, to accomplish the arrest and prevent a continuation of such illegal conduct, but not to kill him. If the jury believe from the evidence that when the defendants undertook to stop Phillips' automobile near the railroad overpass mentioned in the evidence that he, Phillips, tried to run over the defendants, or either of them, with his machine, then he, Phillips, had committed an offense in the presence of the officers and it was their duty to arrest him therefor. In performing their duty as peace officers (if the jury believe Phillips had committed or was committing any one or all of said offenses), the defendants had the right to use such force as was necessary, or seemed to them in the exercise of a reasonable

judgment to be necessary, short of killing Phillips, to arrest him, and to stop him from continuing to drive his automobile while under the influence of intoxicating liquor or in such manner as to endanger the safety of other travelers on the highway, and it was Phillips' duty to submit peaceably to the arrest and stop his automobile.

2. If the jury believe from the evidence beyond a reasonable doubt that the defendants, George Siler and Lewis Bailey, acting in concert, in Whitley County, and before the finding of the indictment herein, unlawfully and feloniously (a) shot a pistol or pistols at and struck the said automobile, or shot near to or about said car, when it was not necessary and not believed by the defendants, or either of them, in the exercise of a reasonable judgment, to be necessary to do so in order to perform their duty as officers as stated in Instruction No. 1, and that as a direct and probable, though unintentional, result Phillips lost control of the automobile he was driving and thereby wrecked it, causing his death; or (b) recklessly and with gross carelessness shot a pistol or pistols when the defendants or either of them knew or had reason to know that shooting a pistol or pistols in that manner was dangerous to the life of the said Phillips, although neither of them intended to cause said automobile to be wrecked or to cause said Phillips to be killed, in either event you should find the defendants guilty of voluntary manslaughter and fix their punishment at confinement in the penitentiary for the period of not less than two nor more than twenty-one years, in your discretion.

3. If the jury do not believe as set out in Instruction No. 2, but do believe from the evidence beyond a reasonable doubt that on the occasion referred to, and within twelve months before the finding of the indictment herein, the defendants, acting in concert, shot at and struck, or shot near to or about, the said automobile being driven by the deceased, Phillips, for the purpose of stopping the automobile and arresting him, without any purpose of causing the car to be wrecked, or of killing or injuring anyone in it, and at a time when the defendants had reasonable grounds to believe, and did believe, there was no danger in so firing the pistol or pistols (if the jury believe from the evidence beyond a reasonable doubt that they or either of them did so) but nevertheless that the wrecking of the automobile and killing of Phillips resulted directly and proximately from the said

firing at and striking, or shooting near to or about said automobile (if the jury believe from the evidence beyond a reasonable doubt they or either of them did so) then the jury should find the defendants guilty of involuntary manslaughter and fix their punishment at a fine in any sum in your discretion, or at confinement in the county jail for any period of time, in your discretion, or you may both so fine and imprison them, in your discretion.

4. If the jury believe from the evidence that the deceased, Phillips, had committed one or more of the offenses described in Instruction No. 1, in the presence of the defendants, then and in that event it was their duty, as peace officers, and the duty of each of them, to arrest Phillips and to prevent a continuance of such offense or offenses, and it was Phillips' duty to submit and stop; and if the jury believe from the evidence that in attempting to make said arrest and to stop said automobile the defendants (a) used no more force than was reasonably necessary, or seemed to them in the exercise of a reasonable judgment to be necessary, to accomplish that purpose under the existing circumstances and conditions proven in the evidence; or (b) that they shot a pistol or pistols merely to cause Phillips to stop and submit to the arrest without any intention of making him wreck the automobile he was driving or to injure or kill himself; or (c) if the jury believe from the evidence that the losing of control and wrecking of said automobile and the death of Phillips was not caused by the defendants or either of them having shot at and struck or shot near to or about it; or (d) that the wrecking of the automobile and death of Phillips was the sole result of his own negligence and carelessness or intoxicated condition, then the jury will find the defendants not guilty.

5. The word "willfully" as used in these instructions means intentionally not accidentally. The word "feloniously" as used herein means proceeding from an evil heart or purpose, done with the deliberate intention to commit a crime. The term "with gross carelessness" as used in Instruction No. 2 means that the act was done under such circumstances as to strike one at first blush as reckless or wanton. The term "negligence" as used in Instruction No. 4 means a failure to exercise such care as is usually exercised by an ordinarily prudent person under like circumstances.

6. If upon the whole case the jury have a reason-

able doubt of the defendants having been proved guilty you should find them not guilty. Or if you shall believe from the evidence beyond a reasonable doubt that the defendants have been proved guilty but entertain a reasonable doubt as to whether they have been proved guilty of voluntary manslaughter (as defined in Instruction No. 2) or of involuntary manslaughter (as defined in Instruction No. 3) then you should find them guilty of the offense of lesser degree, namely, of involuntary manslaughter.

The testimony that the defendant, Siler, had on one or more previous occasions shot at another automobile for the purpose of stopping it was incompetent, and questions as to his habit of doing so, with the collateral interrogatories, were improper and prejudicial. Evidence of this character is wholly outside the exceptions to the rule that a defendant may not be asked concerning the commission of a distinct offense. Crawford v. Commonwealth, 241 Ky. 391, 44 S. W. (2d) 286; Rhodes v. Commonwealth, 278 Ky. 504, 128 S. W. (2d) 948.

On cross-examination the defendant Bailey was asked if at the scene of the tragedy Mrs. Cora Douglas had not said to him, in substance, "If this was my man, Jess Douglas, or any of my brothers, I would kill you before you left these grounds." He was also asked if he had not then walked across the road and talked to Siler and that both of them laughed. He answered "No" to each question. In rebuttal three witnesses were permitted to say that the statement was made to Bailey by Mrs. Douglas. The court admonished the jury that they could consider the evidence only for the purpose of contradicting or discrediting "the witness, Bailey," and not as substantive evidence. Any such statement made by Mrs. Douglas to Bailey was but her own declaration and was inadmissible for any purpose. It could not be considered as such an accusation of guilt that Bailey's failure to deny it could be considered a tacit admission. Concerning the incompetency even of an accusatory declaration of the victim of a crime, we have said:

"It violates the first principle in the law of evidence to permit a defendant's rights to be affected by declarations of one made without the sanction of an oath or of the presence of death or as a spontaneous utterance connected with the occurrence." Griffith v. Commonwealth, 250 Ky. 506, 63 S. W. (2d) 594, 596.

The evidence was not competent for any purpose. All other questions reserved.

Judgment reversed.