## Carney, alias Kearney v. Commonwealth.

(Decided September 27, 1918.)

### Appeal from Kenton Circuit Court.

1.  Criminal Law—Change of Venue—Discretion of Court.—A change of venue in a criminal case, is a matter within the sound discretion of the trial court, and its decision thereon will not be reversed, unless it appears, that it abused its discretion.

2.  Criminal Law—View by Jury of Place Where Crime Committed.— Permitting a jury to have a view, of the place where a crime is charged to have been committed, without the presence of the defendant, is an error, but a reversal of a judgment of conviction on account of such error will not be made, if it is affirmatively shown, that the substantial rights of the defendant were not prejudiced thereby.

3.  Criminal Law—Evidence—Use of Map by Jury.—It is not im-
    proper to permit a jury, in a criminal case, to take with them
    when they retire for deliberation, a map, which has been properly
    admitted as evidence, upon the trial.

LEWIS F. BROWN for appellant.

CHARLES H. MORRIS, Attorney General, and STEPHENS L.
BLAKELY, Commonwealth Attorney, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Patrick Carney, alias Kearney,
jointly with one James Lawler, was indicted in the
Kenton circuit court for the crime of murder, alleged
to have been committed by shooting and killing John
Rhem. The evidence, almost without contradiction,
proves the circumstances of the tragedy, to have been,
as follows: On the night of March 5th, 1918, a building
and loan association, which has its office at the north-
west corner of Twelfth and Russell streets, in the city
of Covington, was holding a meeting of its members for
the purpose of electing officers. On the corner men-
tioned and facing Russell street is a building, the front
room of which was used as a saloon, and behind the
room, in which the saloon was kept, were a second and
third rooms, which composed the offices of the building
and loan association. A door opened from the saloon
into the second room and a door from the second room
into the third room. The building adjoins the street,
and doors, also, open from the street into the second and
third rooms, respectively. It seems, that the members
of the association were required to pay any indebted-
ness on their part, to the association before they were
eligible to vote in the election of officers and directors.
On the occasion of this meeting the deceased, John
Rhem, was occupying a seat, at a table, in the second
room, where he was engaged in receiving the payments
of indebtedness to the association by such members as
desired to participate, in the voting, and in this duty he
was assisted by three other members of the association,
who, also, had seats at the table. In the third or rear
room, Theodore Kluemper, who was the chief of police,
of the city, and three other members of the association
were seated at a table receiving and counting the bal-
lots, which were cast at the election, by the members of
the association. While they were thus engaged, the ap-

pellant, Carney, alias Kearney, accompanied, by either James Lawler or Zeke Moran, came into the room unobserved, and pointing pistols at Kluemper and his companions, demanded money from them. Carney had two pistols and the other party had one. Kluemper, thus taken at a disadvantage, replied, that they had no money there, but the money was in the next room. Carney and his companion then proceeded into the room where Rhem and his companions were receiving the money. Presenting their pistols, they demanded the money, when Rhem, who was an aged man of eighty-three years, put out his hand to take the box, in which the money was being stored, and immediately Carney shot him. The ball from the pistol struck and passed through the heart of Rhem and he died immediately. Andrew Nordmeyer was in the saloon and came from there into the room, where the bandits were, just at that time, when one of them shot him, the ball taking effect in his head, and causing his immediate death. As soon as the appellant and his associate left the room, where Kluemper was sitting at the table, he secured his revolver, from the pocket of his overcoat, which was hanging in the room, and proceeded to follow into the room, where Rhem was killed. As soon as he appeared in the door, leading into that room, Zeke Moran, fired upon him with a revolver. Kluemper returned the fire and a pistol duel, then ensued between him and the bandits, which terminated by Moran being killed and Kluemper receiving a wound in the face. From fifteen to twenty-five shots, in all, were fired. When Kluemper's pistol was empty, one of the two living bandits, either Carney or Lawler, seized the money, amounting to about $1,100.00, and fled out of the side door into the street, and in the midst of the excitement made their way to an automobile, which was standing in readiness, and escaped to Cincinnati. The robbery and murders occurred shortly before nine o'clock, in the evening, and Carney was arrested by the police of Cincinnati, at about two o'clock thereafter, and when arrested he had upon his person $164.00 in currency. Nineteen of the bills were perforated, as though by a bullet. The three bandits, Carney, Lawler and Zeke Moran had secured an automobile and chauffeur to drive it, early in the evening in Cincinnati, and had driven near to the place of the murders, and then left the automobile, to await

them, while they entered the building and committed the crimes. Before arriving in Cincinnati, on their return, Carney and Lawler left the car, and said to the chauffeur, that they would see him on the following day. The only issue, upon the trial, was the identity of Carney, with the man, who was present in the room, and shot and killed Rhem. Neither of the three bandits wore any disguise, and hence it was proven by Kluemper and one other in the room, where they first demanded the money, and by two other persons, in the room, where Rhem was killed, that the appellant was one of the men, who participated in the robbery, and the one who shot and killed Rhem. It was proven by the chauffeur, that the appellant engaged the car and his services, and all of the actions of the parties in Cincinnati and Covington before the tragedy, and in these statements the chauffeur was corroborated by other witnesses. It was proven by the chauffeur that the appellant and his companions left the car, near the scene of the robbery, and very soon he heard a fusillade of firearms, and immediately appellant and Lawler returned hurriedly to the car, with the statement that they had been in a fight. The car was a Winton Six, with a gasoline tank in the rear, was painted a wine color, with a red stripe around it. The car was identified by witnesses as being the one, in which appellant and others were riding upon the streets of Covington just preceding the murder. Upon a trial of the action before the court and a jury, the appellant was found guilty by a verdict of the jury, which fixed his penalty at death, and a judgment of the court was rendered accordingly. The appellant's motion for a new trial having been overruled, his dissatisfaction with the judgment caused him to appeal to this court.

The grounds upon which he relies for a reversal of the judgment are:

1. The court erred in overruling his motion for a change of venue.

2. The court erred to his prejudice, in permitting the jury to have a view of the place, where the murder occurred, without his presence.

3. Misconduct of the attorney for the Commonwealth in his argument to the jury.

4. Errors to his prejudice, in the admission and rejection of testimony.

(a)  The motion for a change of venue from the county of Kenton to some other, was based upon the ground, as alleged, that such a general prejudice existed in the county of Kenton, against the appellant, that he could not obtain a fair trial therein.  The petition of appellant was supported by the affidavits of only two persons, one of whom was not a resident of the county. Witnesses were called and testified orally before the court to the effect, that there did not exist any undue prejudice against appellant, among the people of the county: that. the only · feeling which existed, was against the perpetrator of the murder, and that there was no disposition to visit punishment upon any person, except it be shown, that he was the guilty one. These witnesses showed themselves well acquainted in the county.  This is a question which· addresses itself to the sound discretion of the trial judge, and this court will not interfere with his discretion, unless it appears to have been abused.  Under the evidence the trial court did not abuse· its discretion in overruling the motion. Heck v. Commonwealth, 163 Ky. 518; Howard v. Commonwealth, 15 R. 874; Crockett v. Commonwealth, 100 Ky. 382.

(b)  At the conclusion of the evidence offered in support of the indictment, the Commonwealth's attorney moved the court to direct that the jury be permitted to view the rooms in which the tragedy occurred. The appellant and his attorney were present in court, and objected to the motion, and saved an exception to the ruling of the court, in sustaining the motion.  No one representing the prosecution accompanied the jury. It went in the custody of the sheriff.  No one pointed out any object to the jury, or made any comment, or statement of any kind to the·jury, while it was viewing the rooms.  The sheriff, before the jury entered the rooms, excluded all other persons from the rooms.  The jury accompanied by the sheriff entered one of the rooms, and passed through the three rooms observing them, as they passed through them, without suggestion or comment from anyone. The appellant did not suggest any desire to accompany the·jury, or be present, when it viewed the rooms.  With full knowledge of the fact, that the jury had made a view of the rooms without his presence, he did not ask that the jury should be dis-

charged. He for the first time makes an objection, in his motion for a new trial. The sending of the jury to view the place of the murder was a matter within the discretion of the trial court. Young v. Commonwealth, 141 Ky. 708, and no error was made in so doing in this case. The error made, was in the failure to send the appellant along with the jury. The record, failing to show to the contrary, it is presumed, that the trial judge accompanied the jury. The only issue, in the evidence, was as to the identity of the accused. It is impossible to see how a view of the premises, as it was made, would shed any light upon this issue, in one way or the other. The proof upon the motion for a new trial affirmatively shows, that the substantial rights of the appellant were not prejudiced, by his failure to be present with the jury, at the view. As stated, the jury could have obtained no evidence by the view, as to whether or not the appellant shot or killed Rhem, there, on the 5th of March, and hence his rights could not have been prejudiced. There was no refusal to permit the appellant to accompany the jury, and the failure to send him along with it appears to have been an inadvertence, and he did offer or express any desire to accompany it. Section 340, Criminal Code; Rutherford v. Commonwealth, 78 Ky. 639.

(c) The alleged misconduct of the Commonwealth's attorney in the closing argument to the jury, consisted of comments made by the attorney upon the actions of the appellant, in presence of the jury, when witnesses were detailing the circumstances of the murder and the relative positions of the parties, and in which he said, that appellant, pointing out with his hand upon the table, said to his attorney: "I was not here but over there." This statement, if true, would amount to a confession by the appellant, that he was present, and in the room, when the deceased Rhem was killed. There could be no question of the impropriety of such a statement by the attorney for the Commonwealth, as it appears that such statement was not made by appellant to his attorney. The appellant objected to the statement, at the time, and the court sustained the objection and warned the jury to disregard and not to consider such statement. The attorney for the Commonwealth, then, in the presence of the jury, disclaimed any intention to be able to repeat any statement by appellant to

his counsel, or that there was any such conversation, as his statement would seem to indicate, but his intention had been merely to draw an inference from the actions of the appellant in the presence of the jury. It does not appear that this occurrence after the admonition by the court, and the disclaimer of the attorney for the Commonwealth, could have prejudiced the substantial rights of the appellant, under all the circumstances surrounding the case.

(d) Certain minor errors in the admission of testimony are complained of, but the errors are trivial, and such as could not have prejudiced the appellant's defense or have in any manner affected the verdict.

(e) It is insisted that the court erred in permitting the jury, when it retired to deliberate to take with them a map which had been admitted in the evidence and used upon the trial in the examination of the witnesses. This was not error, as the ruling was in accordance with the requirements of section 248, Criminal Code.

Upon the entire record it appears that the appellant has had a fair trial and has been convicted of a most atrocious and inexcusable crime by the overwhelming weight of the evidence.

The judgment is, therefore, affirmed.