## Shelton v. Commonwealth.

(Decided November 27, 1928.)

### Appeal from Bell Circuit Court.

1.  Criminal Law.—In prosecution for murder, instruction that killing by deputy sheriff was excusable in case jury believed from the evidence beyond a reasonable doubt that deceased committed offense in presence of defendant held erroneous, in that jury is not required to believe beyond a reasonable doubt evidence of facts favorable to defendant and on which he bases his right of acquittal.

2.  Homicide.—Officer arresting person for a misdemeanor had no right to kill such person because of resisting attempted arrest, unless resistance was made with armed force.

3.  Homicide.—Deputy sheriff, on trial for murder, was entitled to instruction under Ky. Stats., sec. 1148a-7, relative to authority to kill person arrested for a misdemeanor and offering armed resistance.

4.  Criminal Law.—Where evidence in murder prosecution was calculated to create a reasonable doubt of guilt in minds of jury, appellate court was not authorized, under Criminal Code of Practice, sec. 353, to affirm judgment on ground that error in instruction could not have affected result.

5.  Criminal Law.—Where map made by engineer, designating different points representing location of parties and witnesses at time of homicide, was identified by witnesses familiar with locality as being an accurate representation of the situation, it was properly admitted in murder prosecution.

JAS. S. GOLDEN and B. B. GOLDEN for appellant.

J. W. CAMMACK, Attorney General, and JAS. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Reversing.

The appellant, George Shelton, under an indictment charging him with the murder of Lee Bain, has been convicted of manslaughter and sentenced to serve six years in the penitentiary. The material facts of the case are these: The appellant was a deputy sheriff of Bell county. The homicide occurred in the late afternoon on the day following the general election in November, 1927, and it is in evidence that Bain and Squire Harvey Hopkins, one of the magistrates of Bell county, had been imbibing rather freely of moonshine whisky until a late hour the night before. About 3 o'clock on that day, the deceased, passing through the village of Four Mile in the Squire's automobile, invited the defendant to ride into Pineville with him. He got in the rear seat of the car; Hopkins and Bain being in front. Shelton got out of the car at a garage in Wallsend, a suburb of Pineville, and the others went on. About 40 minutes later the defendant walked to the home of Hopkins, who is his brother-in-law. It appears in the meantime Bain and Hopkins proceeded to the latter's home, and Ed Smith came along, and he and Bain drove into Pineville to a restaurant, where Bain got something to eat, and then they returned to Hopkins' home. From this point on the evidence is conflicting.

That introduced by the commonwealth showed Lee Bain and Ed Smith, shortly before the shooting, drove up in the car and parked it in front of Hopkins' residence. Smith went into the house, and in a little while Bain walked to the door and talked a few moments with Hopkins, then went back and sat down in the front seat of the car. Shortly afterwards Hopkins came out and got into the car with Bain, and in a few minutes Smith followed, and Hopkins got out of the car. Just then the appellant, Shelton, came out of the house with a pistol in his hand and walked rapidly to the right front of the car, reached in, took hold of Bain, and the latter stepped out with Shelton holding to him. As he got him out, Shelton ran his hand over Bain's body as if searching him, and Bain jerked away from him; then, while Bain had both hands up towards his head, he deliberately shot him, once in the finger and twice in the body, resulting in his death. The commonwealth's witnesses stated that Bain

had no pistol and was not attempting to harm Shelton in any way, and that Bain was not drunk or drinking.

The evidence introduced in behalf of the defendant was that Bain had been drinking during the day, and a short time before he was killed had a half gallon of moonshine whisky. After the appellant left the automobile at the garage and walked to the home of Hopkins, as stated, Ed Smith and Bain drove up. The former came to the door, whereupon the three of them, Hopkins, Smith, and Shelton, went out to the car. Hopkins got in the rear seat, and, while Smith was standing on the outside talking to him, the defendant, Shelton, came to the right front door of the car. Appellant says when he got to the car he saw Bain with his hands and head on the steering wheel, and, as he opened the door, he asked Bain if he was not drunk; whereupon Bain raised up and came across the seat about half way towards him and pulled his pistol out of his right coat pocket. The defendant then grabbed his hand and told him not to pull the pistol out and to consider himself under arrest. There was a struggle, and, as Bain was getting out of the car, his pistol went off into the ground. He jerked away and pointed his pistol at defendant's face. Shelton knocked the gun up, and the bullet went into the air. As Bain again leveled his pistol, defendant drew his own weapon and fired three times in rapid succession. He says that just as he fired the first time Bain fired his third shot. He is corroborated by several witnesses to the extent that he says Bain had a pistol at the time and was drinking heavily; and by Ed Smith and another witness as to the struggle and the shooting by both Bain and the defendant. One of these witnesses, however, is impeached, and is shown to have been at work elsewhere at the time of the tragedy. It is noticeable the Squire did not testify. It cannot be said that the defendant's evidence is corroborated as to his having arrested Bain at the time; and, when asked the specific question why he shot him, replied, "Because he was shooting at me; I thought that was my chance." However, his own testimony authorized an instruction to the jury on that theory of his defense.

In addition to the usual self-defense instruction, the court advised the jury that being drunk at the place mentioned in the evidence was a public offense, and the carrying on one's person of a deadly weapon concealed was

also a public offense. He then advised the jury as to the duty of an officer relating to the arrest of persons committing an offense in his presence, and the reciprocal duty of the person sought to be arrested, but, if he did not submit and offered resistance to the officer, then the latter had the right to use such force as was necessary or believed by him in the exercise of reasonable judgment to be necessary to compel submission to arrest, "even to the extent of taking the life of another where *armed* resistance is offered." He further instructed the jury if they believed "from the evidence *beyond a reasonable doubt* that the deceased, Lee Bain, committed the offense of being drunk or carrying on or about his person a concealed deadly weapon in the presence of the defendant, and that the defendant then and there undertook or attempted to arrest the deceased on both or either of said offenses, and that the deceased, Lee Bain, resisted said attempted arrest with *armed* force if he did so do, and it was necessary or believed by the defendant in the exercise of a reasonable judgment to be necessary to compel the deceased to submit to arrest to shoot and kill the deceased, the killing was excusable and you will find the defendant not guilty."

So much of the instruction as provided that the jury should believe from the evidence beyond a reasonable doubt that the deceased was drunk or carrying a deadly weapon concealed was clearly erroneous and requires a reversal of the judgment. The jury must believe beyond a reasonable doubt evidence of facts adverse to and against the interests of a defendant or which tends to establish his guilt, but such degree of belief is not required as to facts favorable to him or upon which he bases his right of acquittal. Lee v. Commonwealth, 210 Ky. 410, 276 S. W. 127, and authorities cited. With this phrase "beyond a reasonable doubt" eliminated, the instruction is a clearly expressed statement of the law applicable to the facts of the case.

Exception is taken by the appellant to the word "armed" used in the instructions, but that was proper, for the defendant otherwise had no right to kill Bain under the circumstances, as he was arresting him for a misdemeanor.

The appellant insists that he was entitled to an instruction founded on section 1148a7, Kentucky Statutes, as applied and construed in Mullins v. Commonwealth,

219 Ky. 60, 292 S. W. 471, and several other previous cases therein cited. In that case it was shown that a prisoner charged with a misdemeanor had offered armed resistance to the officer, which converted the resistance into a felony and authorized the officer to kill him if necessary or apparently necessary to perfect the arrest. Such an instruction would have been proper in this case. With the objectionable restriction or limitation above noted eliminated from the instruction given, it is substantially the same. Indeed, it seems to us more favorable to the defendant than the form of instruction under section 1148a7, approved in the Mullins and other cases referred to. Either the latter form or instruction No. 6, as corrected, will be proper on another trial of this case, but both should not be given.

The Attorney General concedes the error in the instruction, but has insisted that it could not have been prejudicial to such an extent as to authorize a reversal of the judgment, directing our attention to section 353, Criminal Code. According to the evidence of the commonwealth, this was a cold-blooded, deliberate murder, committed without any excuse or justification. No motive whatsoever appears to have been shown. According to the evidence of the defendant, it was both an excusable and justifiable homicide—the former because done in self-defense, and the latter because done in performance of his duty as a peace officer. Roberson's Criminal Law, sec. 297. The defendant was entitled to have his defense of justification submitted under a correct instruction. The evidence as a whole was calculated to create a reasonable doubt of guilt in the minds of the jury, and under such circumstances we consider the erroneous instruction to have been prejudicial to the substantial rights of the defendant, and we are not authorized to affirm the judgment on the ground that the error could not have affected the result of the jury's deliberations.

It is urged by the appellant that it was error to admit in evidence a map made by an engineer, who designated different points on it representing the location of the automobile in its relation to the building and the places where different witnesses later testified they were at the time of the tragedy, some of which points were put on the map from information received by him. If this were all, the contentions would be meritorious;

but several witnesses familiar with the scene and the location of those present at the time testified that the map was an accurate representation of the situation. The court very properly admonished the jury they should not consider the testimony of the draftsman as to where the homicide occurred or where the automobile was at the time, and that the map was being introduced as an aid to the witnesses to point out more definitely, if they could, the places being referred to. It is a frequent practice to have maps or diagrams drawn by some one qualified for that work and have their accuracy verified by others who are familiar with the conditions, such as was done in this case. These diagrams are always of material assistance in the trial of a case and are perfectly competent as evidence under such circumstances. Roberson's Criminal Law, sec. 518.

Other errors relating to the form of questions and improper argument of counsel are raised in appellant's brief, but these are not passed upon, as they are not likely to occur on another trial.

The judgment is reversed because of the error indicated.