## Colvin v. Commonwealth.

(Decided Feb. 14, 1933.)

WAUGH & HOWERTON and R. H. RIGGS for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appeal is by Serl Colvin from a judgment for five years in the penitentiary upon a conviction of voluntary manslaughter in the killing of a little boy named Joe Creech, by the wanton and reckless driving of an automobile. The tragedy occurred in the village of Worthington, Greenup county, about 8 o'clock in the evening of April 9, 1932.

Joe Creech, who was eleven years old, and his brother, Tom, one year older, had been sent by their

widowed mother to a nearby store for some hay for her cow. The little boys had built themselves a two-wheel cart and were returning home with the bale of hay on it. They were on the north side of the street, which was the right one for them, and their cart was partly on the earth shoulder of the concrete road, which was twenty feet wide and straight for some distance. The night was dark and rainy. According to the testimony of Tom, there were no cars or other vehicles on the street, except a truck which was being driven by the defendant in delivering groceries for his father. It came in the opposite direction, and was being driven very fast on the wrong side of the street. Its lights were cast upon the boys, but it came ahead at a rapid rate of speed and violently struck the cart and the little boys. The older boy, Tom, was seriously injured, and Joe's neck was broken and he was killed outright. The body of the child was found fifty-two feet from where it appeared the automobile had struck him. The distances from that point to where parts of the cart and the dead and injured boys were found prove that they were struck with a terrific force. The driver of the automobile sped on without stopping. The tracks of the machine showed it had gone so far on the wrong side of the road as to run off the concrete onto the shoulder, and then had been driven back to the right side. The morning after the accident, when the defendant surrendered to the officers, he stated, according to their testimony, that he had not seen the boys until he was right on them, and that he did not stop after striking them because he was scared. He also stated that he had drunk a half pint of whisky before the accident. Some companions of the afternoon testified that he had had a pint of liquor, and, while not drunk when they saw him, yet he was showing the effect of the liquor. The commonwealth thus showed that the defendant was driving very fast on the wrong side of the street of a village, with poor visibility, due to the darkness and misty rain, and probably while he was under the influence of intoxicating liquor.

The defendant testified that he was driving to his father's home on the right side of the street at fifteen or twenty miles per hour when "it seemed like somebody pushed a box out in front of me." He endeavored to miss the object, but struck something that sounded like a board breaking. He slowed down and looked back, but,

seeing nothing, went on. However, he did not stay either at his own or his father's home that night. The next morning he surrendered to the officers. The defendant denied having had anything to drink during the day, and introduced his father and a number of witnesses who stated that before the accident the defendant was sober, and they smelled no odors of liquor on him. The defendant insisted that the object which he struck, and which proved to be the little boys and their cartload of hay, was on the right-hand side of the road. A woman living at the point testified that as she was getting into bed she heard a truck pass and then a child scream. She ran out and found Tom injured, and he was then on the right-hand side of the road in the direction in which the defendant was traveling. Her husband testified that after the child had been moved he saw part of the cart and some hay on that side of the road. There is some additional evidence, though slight, tending to show that the accident happened on that side. Supplementing this evidence, the appellant argues that since the children's home was on that side it was quite natural that they should have turned across the street from the left to the right side at that place, and suddenly appeared before the defendant's automobile.

In Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164, the subject of criminal liability for the killing of a person by the driving of an automobile is fully considered. It is therein stated that if one operates such a vehicle upon the highway in such manner that he knows or has reason to know that it is reasonably calculated to injure others using the highway, and recklessly, wantonly, and with gross carelessness, strikes and kills another, he is guilty of voluntary manslaughter. Involuntary manslaughter under such circumstances is also defined. The opinion sets out the form of instructions to be given upon another trial of that case, and those instructions were given in the instant case.

It is insisted that the verdict of guilt of voluntary manslaughter is flagrantly against the evidence because, first, the evidence does not prove negligence; and, second, if it is so regarded, it is not of the degree required to constitute that crime. We cannot so construe the evidence as a whole. The physical facts and the testimony of the surviving child very forcefully rebut the

defendant's evidence and arguments as to how the accident occurred, and shows the grossest sort of recklessness. The facts thus adduced by the commonwealth clearly distinguish the case from Haupe v. Commonwealth, 234 Ky. 27, 27 S. W. (2d) 394, which is relied upon by the appellant.

A large detail map was made by a kinsman of the deceased child, and was introduced and filed in evidence without objection. The witnesses testified that it was a pretty fair representation, and reasonably disclosed the situation. However, the draftsman put upon the map lines and spots which he marked and designated as the course of the automobile, showing that it crossed abruptly and diagonally from the right to the wrong side of the road, struck the child, and then returned to the right side. The point of the accident, places where the children were found, and the tracks of the automobile are all designated, and distances given. This was done from information obtained from others, for the draftsman had no personal knowledge concerning these things. However, some of these points and distances were substantially established by witnesses who knew the facts.

As stated in Elkins v. Commonwealth, 244 Ky. 583, 51 S. W. (2d) 916, in a manslaughter prosecution arising out of an automobile accident, the use by a witness having knowledge of the location of machines just after the accident of a sketch or map made by himself for purposes of illustration and not to establish mathematical details was proper. See, also, Shelton v. Commonwealth, 226 Ky. 460, 11 S. W. (2d) 125; and Cook v. Commonwealth, 232 Ky. 613, 24 S. W. (2d) 269. The main use of a map upon a trial is not as evidence, but to enable the jury to better understand the oral testimony, and it is not material by whom the map was prepared if it is shown to be accurate.

It would have been better to have omitted from this map the elaborate and detailed representations of the movable and temporary objects, for they were put on it by one who had no personal knowledge of their location, and there was sharp disagreement as to some of the things thus shown. Indeed, the prominence given these things, some of which do not seem to have been substantiated by the testimony, was probably hurtful to the defendant. But there was no objection to

the use or filing of this map. Conceding this, the appellant directs his argument of error respecting the map to the court permitting the jury to take it to their room over his objection. Having been admitted in evidence, it was within the discretion of the judge whether he should permit the jury to take the map for use in their deliberations, and there was no error in his doing so. Criminal Code of Practice, sec. 248; Carney v. Commonwealth, 181 Ky. 443, 205 S. W. 408.

In the argument, an attorney assisting in the prosecution made a reference to the "fine fee" that the defendant's father had paid one of his lawyers. There was no reason for this; but certainly it cannot be held prejudicial to the defendant's rights.

Five years' imprisonment in the penitentiary seems to us to be a severe penalty under the circumstances. There was no intentional doing of a wrong, nor actual malice such as springs from an evil heart, but only an implied malice arising from reckless driving. Doubtless this young man (who was not quite twenty-one years old) suffers much anguish in the recollection of his tragic carelessness. Remorse is often the most severe punishment for a crime. But this court is not authorized in a criminal case to modify the judgment or to reverse it because it seems excessive, for the verdict was within the limits provided by the statute for such crimes. Galloway v. Commonwealth, 209 Ky. 501, 273 S. W. 63. The matter of commutation or melioration is one to be addressed to the chief executive.

The judgment is affirmed.

Whole court sitting.