# Carnes v. Commonwealth.

May 30, 1939.

Lester and Riedinger for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellant, Thomas Carnes, is an eighteen year old high school student, living in Campbell County, Kentucky, who, upon his trial in the Powell Circuit Court on an indictment charging him with the crime of manslaughter, committed by driving an automobile into and against Mrs. Annie Harris and killing her, was convicted of involuntary manslaughter, a misdemeanor offense, and his punishment fixed at a fine of $100 and costs.

The action now comes before us upon his motion for an appeal from that judgment.

In support of appellant's motion for an appeal and reversal of the judgment, counsel for appellant sets out the testimony given upon the trial by both the commonwealth's and the defendant's witnesses, which he earn-

estly insists establishes the absence of any culpable negligence or carelessness, or any degree of negligence or carelessness, upon the part of defendant in the operation of his car; but that, on the other hand, all the evidence conduces to show that Mrs. Harris' death was the direct result of her own error and carelessness, in darting out (without first looking to observe the traffic condition of the highway) from the left side of the road, along which she was then hastily walking or running, directly into the path of appellant's car, which, as appears is admitted, he was then driving on his right side of the road at the usual and legal rate of speed of some thirty or forty miles an hour.

It is shown by the record that this accident occurred on the afternoon of May 14, 1938, near the little town of Nada in Powell county, Kentucky, as the parties involved were traveling across the bridge on highway No. 15, located below Nada and some ten miles distant from Stanton.

The facts and circumstances under which this tragic accident befell Mrs. Harris, as testified by all the witnesses, are as follows:

Ellis Rose, the first witness called for the commonwealth, testified that he lived at Nada and that Mrs. Annie Harris had been killed while crossing this bridge on highway No. 15, but that he did not see the car hit her.

Alonzo King, the second commonwealth witness called, testified that he was driving his car on highway No. 15, in Powell County, on the occasion of the accident, when the decedent, Mrs. Harris, who was his sister-in-law, was killed; that he was at the time traveling on his right side of the highway, when Mrs. Harris, who came onto it from the Ashley home and side road, on the left of the highway, saw him and flagged him down; and that, as he was then but a short distance from the bridge, he drove across it and waited for her at its far end. Witness further testified that at this time the car of appellant was behind his, also proceeding towards Stanton, on his right side of the road; that his sister-in-law, after flagging him down, came down the highway on its left side "at a very good pace, something like a run," and had gone for a short distance on the bridge when she suddenly turned, without stopping to see if other cars were approaching, and ran diagonally

across the road into the path of Carnes' car; that when he looked again, she was lying under the end of his (witnesses') car, some twenty-five or thirty feet distant from where she had been struck by Carnes' car; that he didn't see who was driving the car at the time, but defendant had told him he was. He testified that the car was going "near forty miles an hour" at the time of the accident, but, when interrogated as to when the accident occurred, he erroneously testified, "last Fall some time, it must have been in the late Fall." He further stated that the things he testified to, as having been seen by him, he saw in a rear vision mirror in his car; that there were no buildings near the road or bridge and that the highway was open; and that immediately after the accident, he (the witness), while conversing with appellant, had stated that the accident in which his sister-in-law was killed was unavoidable, in that she had run directly in front of appellant's car. Also witness testified that there was no one in the car with him at the time of the accident; that he didn't see who was driving the car at the time, but that appellant had told him he was; and that there were four other people in the car with him.

Jesse Ashley, the next witness called for the commonwealth, testified that he lived on Highway No. 15, about 100 yards from where the accident occurred; that he was at the time chopping wood at the rear of his house and saw appellant's car strike Mrs. Harris; that she had "trotted along her left side of the road" about 100 yards below his house before being struck; that the car of Mr. King, her brother-in-law, was waiting for her on the opposite side of the road at the far end of the bridge; that the appellant's car, at the time it struck Mrs. Harris, was traveling about thirty miles an hour; that the appellant had four other young people in the car with him when he stopped the car and offered to render aid to Mrs. Harris. Further, witness identified the rough drawing or diagram made by Mr. King, decedent's brother-in-law, as being substantially correct in portraying the relative positions on the bridge of the parties and the facts surrounding the happening of the accident, and also testified that he saw appellant's car strike Mrs. Harris as she left the left side of the road and started over to Mr. King's car, awaiting her on the road's right side at the far end of the bridge.

J. C. Everman was the next and last of the common-

wealth's witnesses, who testified that he was an under-taker at Stanton and that Mrs. Harris' body was brought to his funeral home, where he conducted an inquest, which showed that Mrs. Harris' neck had been broken by the impact of the car.

At the conclusion of this testimony, appellant moved that the court direct the jury to return a verdict of acquittal for appellant, which motion was overruled. To this ruling objections and exceptions were taken.

Appellant then was called and testified that he was eighteen years of age and lived at California in Campbell County, Kentucky, where he attended the Campbell County High School; that he had lived in Kentucky with his parents all his life; and that on the day of the accident the junior and senior classes of the high school had gone to Natural Bridge on a picnic, as was the annual school custom, the principal and two music teachers accompanying them on the trip. Appellant further testified that he did not own a car, though he had been driving for about three years and that, on the day of the accident, he was driving George Hawkins' car, who, together with three of his schoolmates, were in the car with him; that there were four cars in the picnic party, which left Natural Bridge to return home about 2:30 in the afternoon of May 14, 1938, with Mr. White, the principal of the school, supervising and leading them in his car; that when he had come to within a short distance of the bridge where the accident occurred, he saw the decedent as she was entering the highway from a road on his left, about a hundred yards ahead of him, when he blew his horn, warning her of his approach. He states that he was then driving his car on the right side of the highway at the rate of about thirty miles per hour and continued to so drive it; that he saw the decedent, upon entering the highway, start running down the left side or shoulder of it, towards the nearby bridge; that when she had run for a distance of ten or fifteen feet on the bridge, she suddenly turned from its left side and, without looking either to the left or right, or giving any notice or sign of her intention to leave that side of the bridge, ran (when only some ten or fifteen feet distant from his car) diagonally across it, directly into the defendant's path. Defendant further states that when confronted with this emergency, created by the decedent, he tried to stop his car, but was unable to do so or to avoid injuring her.

The testimony of George Hawkins, also a witness for the defendant and owner of the car defendant was driving at the time of the accident and one of its five passengers, stated that he first saw the decedent, Mrs. Harris, when they had come to within twenty-five or thirty feet of the bridge, at which time she was running along the left side or shoulder of the road towards the bridge; that they were at this time traveling at a rate of about thirty miles an hour and going, as was Mrs. Harris, towards the bridge, at the lower end of which her brother-in-law was waiting for her; that just as defendant's car was entering upon the bridge, on their right side, the deceased suddenly turned and darted diagonally across the bridge towards her brother-in-law's car; that in doing so she rushed into the pathway of defendant's car within so short a distance of it that it was impossible for defendant to stop the car before it struck her; and that, after striking her, their car turned to the left side of the road and went over the bank into a ditch.

The other witnesses called for defendant, including his three schoolmates who were riding with him at the time the accident occurred, all testified in harmony with and in substantial corroboration of the testimony introduced by both sides as to the facts and circumstances under which this accident occurred, no part of their testimony tending even to impute any causal negligence or blame to the defendant for its happening, but, on the other hand, to establish that it was directly and proximately caused by the thoughtless conduct of the decedent.

At the conclusion of all the evidence, defendant renewed his motion for a peremptory instruction, which was again overruled, when the jury, upon submission of the case under instructions of the court, returned a verdict finding the defendant guilty of involuntary manslaughter, a lesser degree of the manslaughter crime charged in the indictment, and fixed his punishment at a fine in the sum of $100 and costs, on which judgment was accordingly entered.

Appellant has moved for an appeal from this judgment and asks its reversal on the grounds, among others assigned in his motion and grounds for a new trial, that the verdict was flagrantly against the evidence and, further, that there was no evidence supporting the verdict

and judgment entered thereon, for which reason the court prejudicially erred to the substantial rights of defendant in overruling his motion for a directed verdict of acquittal.

Looking to the end of clearly evincing the supporting reason for our conclusion reached, that the defendant's motion for an appeal is meritorious, we have set out, with some fullness, the testimony given upon the trial of defendant, which we deemed necessary because of the nature of these evidentiary grounds upon which appellant moves for an appeal and reversal of the judgment of conviction.

It is to be noted that the defendant was here tried in a criminal action, on an indictment charging him with the crime of manslaughter, committed by his driving his car in a dangerous and reckless manner resulting in the wilfull and felonious killing of decedent.

There is not one word of evidence given by any of the witnesses, whether testifying for the commonwealth or the defendant, tending in the least to show that the defendant on this occasion was negligently driving his car in a dangerous or reckless manner, and perhaps we might add, without deciding, that there was no testimony tending to show that he was not exercising ordinary care in its driving.

It is to be borne in mind that defendant was here convicted of having committed the misdemeanor offense of involuntary manslaughter, when being tried on an indictment charging him with criminal liability for having killed the decedent by the reckless and dangerous manner in which he operated his car upon this occasion.

However, the rule is well settled, as stated in 8 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., Section 5333, page 58, that:

"A person is not criminally liable for every act of negligence which causes an injury to another, since a lawful act negligently performed is not criminal.

"To bring it within the domain of crime, the negligence must be of a gross character, or such as manifests indifference on the part of the accused as to the consequences of his act. * * *

"To impose criminal liability, the negligence

must be of a higher degree than required to establish civil negligence.''

See, also, to like effect the statement of this rule as declared by this court in the very late cases of Haupe v. Commonwealth, 234 Ky. 27, 27 S. W. (2d) 394; King v. Commonwealth, 253 Ky. 775, 70 S. W. (2d) 667; Morris v. Commonwealth, 255 Ky. 276, 73 S. W. (2d) 1; and Dublin v. Commonwealth, 260 Ky. 412, 86 S. W. (2d) 136.

In the King case, supra, it was said [253 Ky. 775, 70 S. W. (2d) 668]:

"It is well settled that if one operates an automobile upon the highway in such a manner as is likely to injure others using the highway and recklessly, wantonly, and with gross carelessness strikes and kills another, he is guilty of voluntary manslaughter. Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164. This principle is based upon the theory that a man intends the natural consequences of his act and that he is aware or ought to be aware of what will result from the reckless or grossly careless operation of an automobile, which becomes a dangerous instrumentality under such circumstances, although he actually has no intention to kill.''

Such was the legal principal and theory upon which the appellant was here indicted, charging him with having driven his car in such a dangerous and reckless manner, upon the occasion in evidence, that he must be taken to have intended the natural consequence of his act or to have been indifferent to the probable or natural result of such grossly careless operation of his car, or to have been aware that the probable result of such gross negligence would be the killing or injuring of some one exercising his like right to use the highway.

The summary of the evidence, hereinabove set out, utterly fails to show that defendant, upon this occasion in evidence, was driving his car in either a reckless or a dangerous manner, as charged, or in such an unlawful manner as indicated indifference to the natural results to be expected therefrom.

All the evidence is, on the contrary, that the defendant was at the time his car struck the decedent driving at a reasonable and legal rate of speed and on his right

side of the road, that he signaled his approach, when seeing decedent traveling along the left shoulder of the road, and that, upon her later suddenly and rashly rushing across his pathway, within a distance of a few feet from his car, he, when confronted with the emergency so created, did all he could to stop his car so as to avoid striking her.

Clearly, according to the testimony of all the witnesses relative to the cause of this tragic accident, it was unavoidable by defendant and was solely and proximately caused by the rash and grossly careless act of the decedent, in blindly and abruptly darting across the bridge into the path of the defendant's near approaching car.

In view of such showing made by the evidence, it is obvious that it was altogether insufficient to impose a criminal liability upon defendant for the death of Mrs. Harris, or to support the jury's verdict finding the defendant guilty of the offense of involuntary manslaughter, based upon her accidental death, in nowise having causal connection with the defendant's mode or manner of driving his car upon this occasion.

Such being the showing of the evidence and the commonwealth having totally failed to show defendant was upon this occasion in anywise recklessly or dangerously operating his car, as the result of which or as causally connected therewith the decedent met her death, it follows that the court erred prejudicially to the substantial rights of defendant in refusing to grant the peremptory instruction moved for, directing the jury to acquit him; and therefore, it being both the right and duty of the court in such case, whether arising in a criminal or a civil action, to give a peremptory instruction, it results that defendant has here, by reason of the court's refusal to peremptorily instruct the jury as moved for, not had a fair trial. For the above reasons, we conclude that appellant's motion for an appeal should be, and it is sustained, the appeal granted, the judgment reversed, and the cause remanded for a new trial consistent with this opinion.