## MARYE v. COMMONWEALTH.

Court of Appeals of Kentucky.

June 22, 1951.

John Y. Brown, Louisville, for appellant.

A. E. Funk, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., for appellee.

COMBS, Justice.

Appellant, Ted Marye, was tried under two separate indictments charging him with the offense of involuntary manslaughter. The jury found him guilty and fixed his punishment at three months in jail and a fine of $2500 on each indictment. He has filed motion for appeal from the judgments entered in accordance with the jury's verdict, and assigns as grounds for reversal that the court erred: (1) In refusing to grant a change of venue; (2) in failing to give an instruction on "sudden emergency"; (3) in instructing the jury as to the degree of negligence necessary to find appellant guilty of involuntary manslaughter; and (4) improper argument to the jury by the Commonwealth's Attorney.

On June 25, 1950, about 9 p. m., appellant was driving his father's automobile in a northern direction on Chinoe Road, which is located in a residential section of the City of Lexington, although not actually within the city limits. As the car approached the home of Mr. and Mrs. LeRoy M. Land, located on the east side of Chinoe Road, it left the highway, crossed the curb, and struck and killed Mr. and Mrs. Land, who were standing at or near the edge of the lawn in front of their home. There is evidence for the Commonwealth that appellant was driving at an excessive rate of speed, and some indication that the lights on his car were not burning. It is also shown by the testimony that he had drunk at least three bourbon highballs around 5 o'clock that afternoon.

According to the testimony of appellant and a young lady who was riding in the car with him, the lights on his car were burning and he was driving on the right-hand side of the highway at a reasonable rate of speed. As he approached the Land residence he observed an automobile with its lights burning, parked on the wrong side of the highway in front of the Land residence. According to appellant, when he was within a short distance of the parked automobile it suddenly pulled out into the highway into the path of his automobile. In order to avoid a collision, he swerved his car sharply to the right, left the highway, ran onto the lawn of the Land residence, and struck Mr. and Mrs. Land.

Appellant's most serious complaint concerns the instructions. The instructions are the same in each case, and we will discuss only those given on indictment No. 2379. Instruction No. 1, given by the trial court, is as follows: "If the jury believes from all of the evidence in this case, to the exclusion of every reasonable doubt, that the defendant, Ted Marye, in Fayette County, Kentucky, and within twelve months next before the finding of the indictment herein, did operate an automobile upon Chinoe Road, a public highway in Fayette County, Kentucky, and did, if he did so, carelessly and negligently run said automobile upon or against Mrs. Ethel Land, thereby producing injuries from which she then and there died, or that at said time and place he operated said automobile at a speed greater than was reasonable and proper, having due regard for the traffic and use of the highway at the time, or so as to endanger the life or limbs of any person, and that while so driving, if he did so, the automobile operated by defendant struck Mrs. Ethel Land knocking her to the ground, thereby inflicting injuries upon her person from which she then and there died, in either of the above events you will find the defendant guilty of involuntary manslaughter, and fix his punishment at a fine not exceeding $5,000.-00, or confinement in the county jail for a period of not more than twelve months,

or both such fine and imprisonment, in the direction of the jury."

Instruction No. 2 defined the words "negligently" and "carelessly." Instruction No. 3 directed the jury to find appellant not guilty if the death of the Lands was the result of an accident, as defined in the instruction, and Instruction No. 4 was the usual one on reasonable doubt.

It will be noted that Instruction No. 1 authorized the jury to find appellant guilty if he "carelessly and negligently" operated his automobile on the occasion referred to in the evidence; or, stated differently, if he was guilty of ordinary negligence. Appellant contends the instruction is erroneous in that more than ordinary negligence is required in order to authorize a conviction for involuntary manslaughter.

The instruction apparently was taken from Stanley's Instructions to Juries, section 817, and is similar to the one suggested by this Court in Jones v. Commonwealth, 1926, 213 Ky. 356, 281 S.W. 164. The only material difference is that the instruction in this case limits the penalty to a fine of not exceeding $5000 and confinement of not more than 12 months, as required by an Act of the 1950 Legislature, KRS 431.075. The same instruction has been approved in Elkins v. Commonwealth, 244 Ky. 583, 51 S.W.2d 916, 917; Colvin v. Commonwealth, 247 Ky. 480, 57 S.W.2d 487; Dublin v. Commonwealth, 260 Ky. 412, 86 S.W.2d 136; Jones v. Commonwealth, 273 Ky. 444, 116 S.W.2d 984, and perhaps other cases.

According to the great weight of authority, mere negligence or carelessness is not enough to impose criminal liability. In 65 C.J.S., Negligence, § 306, it is stated: "In order to impose criminal responsibility, there must have been that degree of negligence or carelessness which is denominated 'gross.' The negligent act must have been of such a gross character as to show an indifference to the injurious results or consequences, and there must have been some measure of wantonness or recklessness."

It is also stated in 40 C.J.S., Homicide, § 62(a): "While the kind of negligence

required to impose criminal liability has been described in differing terms, it is almost uniformly held that it must be of a higher degree than is required to establish negligence on a mere civil issue."

The same rule is stated in different words in 61 C.J.S., Motor Vehicles, § 659(b): "Where negligence is relied on to convict a motorist of involuntary manslaughter, or manslaughter of a grade equivalent thereto, for a death resulting from the operation of his motor vehicle, it has generally been held that the negligence required is more than ordinary negligence or the lack of ordinary care, or more than the negligence sufficient to support a civil action for damages." The case of Jones v. Commonwealth, supra, is cited in the note to this section as adopting a contrary rule.

The majority rule is stated in Miller on Criminal Law, section 93, page 287, as follows: "If a person, in doing a lawful act which might produce death or serious bodily harm, if done without due caution and circumspection, neglects to take such precautions as a reasonable man would take to prevent injury, he is guilty of involuntary manslaughter, if, by reason of his neglect, some other person is killed. Such negligence must be more than mere ordinary negligence. It must be 'gross wanton or wilful negligence,' or 'culpable' negligence."

It is stated in Moreland's "A Rationale of Criminal Negligence," (1944) page 16: " * * * the tort standard of care is used in only four states in defining criminal negligence," and it is pointed out those states are Texas, Oklahoma, Michigan and California, all of which have statutes on the subject. It might be noted at this point that Kentucky has no involuntary manslaughter statute. KRS 435.020 provides a penalty for voluntary manslaughter, but involuntary manslaughter in this jurisdiction is punished as a common law misdemeanor. According to Moreland in his work on criminal negligence (page 127): "The decisions in this jurisdiction are in confusion; apparently, gross negligence in handling a *gun* or an *automobile* makes a killing voluntary manslaughter, all other negligent manslaughter being involuntary, an illogical and unsupported distinction."

In an article on criminal negligence by John L. Davis in 26 Ky.Law Journal 209, at page 228, it is stated: "Apparently the way in which the Kentucky court gets around the requirement of gross negligence as a necessary postulate for criminal liability is that a want of ordinary care in the use of a dangerous instrumentality is per se gross negligence. This would seem to be clearly error because the commonly accepted definition of gross negligence is failure to exercise slight care and not failure to exercise ordinary care." It is also pointed out in the article by Davis that in most jurisdictions more than ordinary negligence, as defined by the tort standard, is required to impose criminal liability.

The Jones case, 213 Ky. 356, 281 S.W. 164, in which this Court first approved the tort standard of care in involuntary manslaughter cases, has not been consistently followed. In the case of Carnes v. Commonwealth, 1939, 278 Ky. 771, 129 S.W.2d 543, 546, this Court quoted with approval the following excerpt from 8 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., sec. 5333, page 58:

"A person is not criminally liable for every act of negligence which causes an injury to another, since a lawful act negligently performed is not criminal.

"To bring it within the domain of crime, the negligence must be of a gross character, or such as manifests indifference on the part of the accused as to the consequences of his act. * * *

"To impose criminal liability, the negligence must be of a higher degree than required to establish civil negligence."

Attention is also called to the fact that this Court has adopted the rule that there must be evidence of gross negligence in order to sustain a conviction for assault and battery. Commonwealth v. Temple, 239 Ky. 188, 39 S.W.2d 228, 229. Certainly, it is inconsistent to require gross negligence in assault and battery cases, and only ordi-

nary negligence in involuntary manslaughter cases.

It is stated in the Jones case, 213 Ky. 356, 281 S.W. 164, that the words "gross carelessness" were omitted from the suggested instructions in order to avoid tautology and confusion in definitions. It must be admitted this did simplify the instructions. But simplification is not to be desired at the expense of accuracy of statement. It is quite possible that the verdict in this case would have been different if the jury had been told that more than ordinary negligence was required in order to support a verdict of guilty. It is noted, in this connection, that the jury's verdict contained a recommendation that appellant's jail sentence be suspended.

■ We have reached the conclusion that Instruction No. 1 is erroneous, and that the failure to incorporate in the instruction a requirement of more than ordinary negligence as a basis for conviction was prejudicial to appellant's substantial rights.

On another trial we suggest that Instruction No. 1 be modified so as to read: "If the jury believes from all of the evidence in this case, to the exclusion of every reasonable doubt, that the defendant, Ted Marye, in Fayette County, Kentucky, and within twelve months next before the finding of the indictment herein, did operate an automobile upon Chinoe Road, a public highway in Fayette County, Kentucky, and did, if he did so, with gross carelessness and negligence run said automobile upon or against Mrs. Ethel Land, thereby producing injuries from which she then and there died, you will find the defendant guilty of involuntary manslaughter, and fix his punishment at a fine not exceeding $5,000.00, or confinement in the county jail for a period of not more than twelve months, or both such fine and imprisonment, in the discretion of the jury."

The giving of this instruction will, of course, eliminate the necessity of defining the words "negligently" and "carelessly." Instruction No. 2, therefore, should be changed to read "Gross negligence is the failure to exercise slight care."

■ It is realized that the phrase "gross negligence" is not entirely satisfactory and may lead to some confusion in distinguishing involuntary manslaughter from voluntary manslaughter. The rule applicable to voluntary manslaughter cases arising out of the operation of an automobile, is that, in order to warrant a conviction, the defendant must be guilty of conduct amounting to recklessness and wantonness. Jones v. Commonwealth, 213 Ky. 356, 281 S.W. 164; Stanley, Instructions to Juries, section 817. In some of the opinions, the word "gross" is used synonymously with the words "reckless" and "wanton." We think there is sound basis, however, for a distinction between the terms.

It is stated in 65 C.J.S., Negligence, § 9: "Conduct or misconduct characterized by the words 'willful' and 'wanton' used either conjunctively or disjunctively is clearly distinguishable from negligence or from gross negligence, the difference being one of kind and not merely of degree." The distinction is also stated in 38 Am.Jur., Negligence, section 48: "A person properly chargeable with wanton misconduct is not simply one who is more careless than one who is merely negligent; wanton misconduct is such as puts the actor in the class with the wilful doer of wrong." The distinction has also been recognized by this Court in the matter of permitting the recovery of punitive damages. See Louisville & N. R. Co. v. George, 279 Ky. 24, 129 S.W.2d 986.

■ It is our view that instructions in voluntary manslaughter cases should require a finding of reckless and wanton conduct, and instructions in involuntary manslaughter cases should require a finding of gross negligence in order to authorize a conviction. We think that if the terms "gross negligence" and "reckless and wanton conduct" are correctly defined in the instructions, the jury will have a practical working basis upon which to render an intelligent verdict. The case of Jones v. Commonwealth, 213 Ky. 356, 281 S.W. 164, and other cases which approve a conviction of involuntary manslaughter on a finding of no more than ordinary negli-

gence, are, to that extent, expressly overruled.

■ We are also of the opinion that appellant was entitled to an instruction on "sudden emergency." He testified that he observed the car parked on the wrong side of the street in front of the Land residence when he was some distance away; that he assumed the car would remain stationary and not suddenly pull out in front of his automobile. Although we know of no criminal case directly in point, there is ample authority for such an instruction in civil cases, and there is no valid reason why the same rule should not apply in a criminal case. This Court has adopted the rule in civil cases that where one is confronted with a sudden emergency, not caused by his own tortious conduct, so that he is required to make a quick decision between alternative courses of conduct in order to extricate himself from peril, the fact that he adopts what might be considered the wrong alternative, in the light of subsequent events, does not necessarily mean that he was negligent in so doing. Owen Motor Freight Lines v. Russell's Adm'r, 260 Ky. 795, 86 S.W.2d 708; Major v. Rudolph, 218 Ky. 1, 290 S.W. 688; Louisville Taxicab & Transfer Co. v. Ramey, 222 Ky. 286, 300 S.W. 890; Moreland's Adm'r v. Stone, 292 Ky. 521, 166 S.W.2d 998. It is pointed out in the case of Feck's Adm'r v. Bell Line, Inc., 284 Ky. 288, 144 S.W.2d 483, that "The 'sudden emergency rule' applies only where the evidence discloses that one became aware of an emergency and was put to a rapid choice of alternative courses of action in order to avoid accident and the jury, in the state of the evidence and in light of subsequent events, might reach the conclusion that the course of action adopted was an unwise one, * * *."

It is stated in Stanley's Instructions to Juries, section 771: "Ordinarily on a plea of not guilty, general instructions are sufficient, but where the accused admits facts constituting essential elements of the offense with which he is charged, and relies upon facts and circumstances amount-

ing to an avoidance of the crime, or having the effect of exonerating him of criminal intent, he is entitled to a concrete instruction on his excuse or theory of the case and a mere general instruction is not sufficient." Although the court instructed the jury to find appellant not guilty if the death of Mr. and Mrs. Land was the result of an accident, which was defined as an unusual and unexpected event happening without negligence, we are of the opinion he was entitled to have his theory of the case presented in more concrete form, and that an instruction on sudden emergency should have been given. It is argued on behalf of the Commonwealth that appellant was not entitled to an instruction on sudden emergency because the emergency was created by reason of his own negligence. But we are not prepared to say that he was guilty of negligence as a matter of law. That was a question for the jury to decide under proper instructions. The giving of the instruction on sudden emergency would eliminate the necessity of giving the "accident" instruction.

The argument of the Commonwealth's Attorney, of which appellant complains, was based on the instructions and was merely the attorney's interpretation of the instructions. The argument was not improper under the instructions given by the trial court, and appellant made no objection at the time; but since we are holding the instructions were erroneous, it necessarily follows that the argument would be improper on another trial under proper instructions.

It is unnecessary at this time to discuss appellant's contention that he was entitled to a change of venue. The local situation has probably changed since the last trial, and if another application for change of venue is filed, appellant's rights should be determined in light of the situation prevailing at that time.

The motion for appeal in each case is sustained. The judgments are reversed and the cause is remanded for proceedings consistent with this opinion.