## VANHOOSE v. COMMONWEALTH.

Court of Appeals of Kentucky.

Jan. 22, 1954.

A. W. Mann, Ashland, Eldred E. Adams, Louisa, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MILLIKEN, Judge.

Lincoln Eugene Vanhoose, who was seventeen years of age at the time of the crime, was convicted of voluntary manslaughter and sentenced to five years in the penitentiary. The action grew out of a truck-automobile collision early in the afternoon of June 11, 1952, at a point on U. S. 62 in Lawrence County known as "Jim Preston Curve."

On the morning of the day in question, defendant, accompanied by Claudie Vanhoose and Ova Vanhoose, his cousins, borrowed a two-ton 1946 International truck belonging to the defendant's father, and proceeded to a garage near Louisa for the purpose of leaving an automobile battery to be charged. After they had deposited the battery at the garage, the three boys continued to Fort Gay, West Virginia, to purchase beer. They were returning to their home near Lowmansville when the truck, operated by defendant, entered Jim Preston Curve on the left side of the road, and collided head-on with an automobile driven by Merl J. Cook, a resident of Michigan. Mr. Cook and his wife were killed and their small son seriously injured. The present prosecution arose out of the death of Mr. Cook.

As his first ground for reversal appellant contends that the evidence does not support the verdict, thereby evidencing passion and prejudice on the part of the jury. We cannot agree. Numerous witnesses testified that their attention was attracted by the unusual noise made by the truck as it sped down the highway and entered the curve. Several estimated that the speed of the vehicle exceeded seventy miles per hour. Moreover, they also noticed that it swerved to the left lane, the lane occupied by oncoming traffic, and remained there until it disappeared around the curve to the fateful collision. The attention of one witness was attracted not only by the unusual noise of the truck, but also by the actions of the appellant who, she said, leaned from the truck as it passed her a half mile from the curve, shouted, banged a beer can against the door of the vehicle, then dropped the can. Another eyewitness, who actually saw the collision, corroborated these facts, and testified that the truck did not slow down before it struck the automobile driven by the deceased.

Photographs showing tire marks at the site of the collision, which were taken by the State Police, indicate that the appellant's truck was on the wrong side of the road for several hundred feet before the point of impact. There also was substantial testimony that the defendant had drunk too much beer. Although the defense either denied or attempted to rebut the Commonwealth's evidence, the jury were the judges of the credibility of the witnesses, and there obviously was substantial evidence to sustain their verdict.

The appellant also contends that his evidence indicates he was confronted

with a "sudden emergency" and that the court should have instructed the jury accordingly. In support of his theory the appellant cites the cases of Johnson v. Com., Ky., 256 S.W.2d 527, and Marye v. Com., Ky., 240 S.W.2d 852. An examination of the evidence in the case at bar indicates, however, that appellant was not in fact confronted with a sudden emergency. Appellant explained that as he approached the curve his cousins shouted for him to swerve to the left in order to avoid a boulder which they claimed protruded over the pavement on the right side of the road. He did so and then was unable to pull his vehicle back to the right before the impact. Again his statements were corroborated by his companions.

The evidence clearly shows that the appellant was traveling on the left side of the highway a considerable distance before he reached the site of the boulder which was located on the right shoulder of the road hardly fifty feet from the point of collision. The boulder did not protrude over the paved portion of the highway, but was back six or eight inches from the edge of the pavement; it was well established at its situs and had not suddenly and conveniently tumbled from the mountainside in order to afford the appellant the defense of "sudden emergency." From the evidence adduced the appellant was not entitled to an instruction covering a sudden emergency.

■ Finally, it is argued that the Youth Authority Act, which became effective on January 1, 1953, applied to appellant, thereby making him a juvenile and subject to the exclusive jurisdiction of the Lawrence County Court. Appellant became seventeen years of age on March 27, 1952, nearly three months before the accident on June 11, 1952. On June 19, 1952, this indictment was returned by the Lawrence County grand jury, and the appellant was convicted on March 27, 1953. Under the law applicable at the time of the accident, KRS 199.080, "a male child of seventeen years of age or less" was under the exclusive jurisdiction of the juvenile or county court unless jurisdiction was relinquished to the circuit court at the discretion of the county judge, but it has been held that a boy who had passed his seventeenth birthday but had not reached his eighteenth birthday could be tried in the circuit court without previous action by the juvenile or county court. Cloyd v. Com., 212 Ky. 178, 278 S.W. 595. As a consequence, the indictment against this appellant was validly issued by the grand jury and trial thereunder was proper.

■ However, it is the further contention of the appellant that the Youth Authority Act of 1952, Chapter 208 KRS, which became effective January 1, 1953, was the governing law at the time of his trial and by its terms any person who has not reached his eighteenth birthday is subject to its provisions and is within the exclusive jurisdiction of the county court, KRS 208.020, unless and until surrendered to the circuit court at the discretion of the county judge, KRS 208.170. In other words, the appellant contends that it was illegal for the Circuit Court to try him in March, 1953, without first obtaining a relinquishment from the County Judge. Jurisdiction, once obtained, is not lightly divested, and we think the General Assembly had that in mind when it provided in KRS 208.390, " * * * Any proceeding pending in a juvenile court, or any criminal proceeding against a child pending in a circuit court, on January 1, 1953, shall be carried to completion in accordance with the provisions of KRS 208.010 to 208.590." By its terms, "If a child tried on a felony charge in the circuit court * * * is convicted of a felony, and sentenced to imprisonment, he shall be committed to the penitentiary, except that in the case of a child who is under twenty years of age at the time of sentencing, the court in its discretion may commit the child to the Youth Authority." KRS 208.180(1). It is our conclusion, therefore, that jurisdiction of the appellant was not divested from the Circuit Court by the new law, but that the Circuit Judge merely was afforded greater discretionary power and a new facility in handling juveniles after conviction.

The judgment is affirmed.