Clinton Ledford STEPHENS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 16, 1962.

Rehearing Denied May 18, 1962.

Joe S. Feather, Williamsburg, James A. Inman, Whitley City, for appellant.

John B. Breckinridge, Atty. Gen., Joe Nagle, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

The appellant, Stephens, appeals from a judgment entered on a verdict finding him guilty of voluntary manslaughter and fixing his punishment at 2 years in prison.

An automobile driven by Stephens had a head-on collision on a 2-lane paved road in McCreary County with a car driven by Arlis Anderson. The road was dry, and the accident happened in the daytime. Anderson was killed instantly. There was a conflict in the evidence as to the respective directions in which the two vehicles were being driven. It is very clear, however, from the tire marks at the scene that the one moving southward, as it emerged from a curve to its right, swung leftward into the northbound traffic lane and was wholly on the wrong side of the road at the moment of impact. Stephens and his witnesses say Anderson was the one coming south and they were northbound, but from the physical facts and certain admissions made by Stephens shortly afterward the jury had sufficient basis to believe beyond a reasonable doubt that it was the Stephens car that was going south and caused the accident by leaving its proper lane.

Stephens and one of his passengers were the only eyewitnesses who testified, and since they both denied that his was the southbound car there was no evidence to explain or mitigate the circumstance that he swerved to the wrong side of the road. Stephens admitted to a state trooper later on that he "had drunk a can of beer or two," and that was the only evidence as to drinking or intoxication. His other admissions furnished no further enlightenment except as to his direction of travel at the time of the collision. The length of the skidmarks, 53 yards, would not of itself indicate the rate of speed or prove a violation of the

statutory speed limit. We do not know how sharp the curve was or to what speed the Stephens car had slowed at the end of the 53-yard braking distance. However, it is reasonable to infer from the physical evidence that as Stephens drove through the curve he was going too fast to keep his car in its proper traffic lane. It seems fairly certain from the testimony that he knew the road, but there was no evidence as to how heavily traveled it was.

There are three degrees of unintentional homicide by negligent operation of a motor vehicle in this state. If death results from reckless or wanton conduct, but without malice (express or implied), it is voluntary manslaughter; if it results from a lesser degree of negligence that is nevertheless "gross," it is involuntary manslaughter. Cf. Marye v. Com., Ky.1951, 240 S.W.2d 852. These two are, of course, common law offenses. The third degree is the statutory crime of negligent homicide, KRS 435.025, based on ordinary negligence. Casey v. Com., Ky.1958, 313 S.W.2d 276, 278.

The most that can be said to have been proved in this case is that Stephens caused the accident by driving to the wrong side as he rounded a curve too fast on a road with which he was familiar. Under the "reasonable doubt" standard of criminal law, does this evidence support a finding of reckless and wanton conduct? A majority of the court thinks it does not.

It is rather harsh to make any unintentional offense a felony. The basic justification for classifying a homicide through negligent conduct as "voluntary" manslaughter (an obvious contradiction in terms) is that under certain circumstances a man's actions may be so heedless of the natural and probable consequences to others that he ought not be heard to say that although he intended the heedless conduct itself he did not intend its consequences. Here we may assume from the evidence that the appellant intentionally drove his automobile at a speed that was excessive in view of the topography of the highway. In so doing he committed a misdemeanor in failing to operate his vehicle in a careful manner (KRS 189.290, 189.990) and perhaps violated KRS 189.300 by failing to keep to the right. Thus he was negligent per se, but felonious recklessness, it seems to us, requires a positive likelihood, a probability, of accident and injury. Under any reasonable standard of justice, "reckless and wanton" conduct must be defined with a view toward the severity of punishment it may entail. After all, voluntary manslaughter is just a shade less than murder, the fine line of distinction having been illustrated by Holmes as follows:

> "To explode a barrel of gunpowder in a crowded street, and kill people, is murder, although the actor hopes that no such harm will be done. But to kill a man by careless riding in the same street would commonly be manslaughter. Perhaps, however, a case could be put where the riding was so manifestly dangerous that it would be murder." Holmes, The Common Law, p. 60.

Though we do not accept appellant's proposition that a case of voluntary manslaughter by automobile cannot be established solely by the physical facts and circumstances (to the contrary, see Casey v. Com., Ky.1958, 313 S.W.2d 276), it is our conclusion that excessive speed on the open highway, without any evidence of how excessive it was or what other conditions attended or led up to it, does not necessarily forecast a sufficient likelihood or probability of accident and injury to support a verdict of voluntary manslaughter.

This view of the case obviates the consideration of other points raised by the appellant. Should the evidence be the same on another trial the highest degree of homicide on which the court may instruct is involuntary manslaughter by gross negligence.

Judgment reversed with directions to grant a new trial.